Murdock v. Lamb.

---

No. 18,936.

E. MURDOCK, *Appellee,* v. J. B. LAMB et al., *Appellants.*

SYLLABUS BY THE COURT.

1. CORPORATION—*Affidavit Showing Payment Per Cent of Capital Stock—Not a Condition Precedent to Corporate Existence.* The statute requires that before a corporation for profit shall commence business it shall file with the secretary of state the affidavit of its president and secretary setting forth that not less than twenty per cent of its capital stock has been paid in actual cash or property equivalent to cash. (Gen. Stat. 1909, § 1709.) *Held,* this requirement is not a step in corporate organization or a condition precedent to corporate existence.

2. SAME—*Failure to File Affidavit—Not a Personal Fault of the Organizers.* Where the organizers of a corporation have procured and filed a charter, paid in the capital stock, elected officers, adopted by-laws, and in all respects completed corporate organization, failure to file the affidavit is a corporate delinquency and not a personal fault of the organizers.

3. SAME—*No Affidavit Filed—Contracts of Corporation Valid —Organizers Not Liable as Partners.* The statute having provided no penalty for its breach, contracts made by the corporation before the affidavit is filed are valid between

the parties, the state alone can complain of the conduct of. the corporation in making the contracts, and the organizers of the corporation are not liable on such contracts as partners.

Appeal from Cherokee district court; EDWARD E. SAPP, judge. Opinion filed July 7, 1914. Modified.

*Al. F. Williams*, of Columbus, and *Clarence A. Crowley*, of Council Grove, for the appellants.

*Truman T. Burr*, of Galena, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover on an account for merchandise sold. The plaintiff's claim was that the defendants, who were the incorporators of the Harmon Mining Company, were liable as partners. The plaintiff recovered and the defendants appeal.

A. M. Gaines, of Galena, Kan., and R. L. Burke, of Joplin, Mo., held contracts for certain leases of mineral land. They entered into an agreement with J. B. Lamb, of Dunlap, Kan., and S. H. Crowley, Dyson Jackson, and C. J. Wolff, of Council Grove, Kan., to form a mining corporation. Gaines and Burke were to perfect title to the mining leases and then to transfer them to the corporation in payment for stock. The other subscribers were to pay cash for their stock. The contract contained the following provision:

"It is further expressly agreed between all of said parties that all of the money paid by the said S. H. Crowley, Dyson Jackson, C. J. Wolff and J. B. Lamb for their subscription to the stock of this company shall be used and expended by said company only for the erection of improvements and appliances on said leased premises for the purpose of operating said leases, and not for any other purpose."

The articles of association were signed on June 16, 1911. Gaines and Burke were not in position to transfer the leases until the following October. Application was then made for a charter, which was duly approved by the charter board on November 1, 1911. The charter fee was paid and the charter was filed on November

24, 1911. The incorporators duly organized by the election of officers and the adoption of by-laws, and the leases were duly transferred to the corporation. Although the capital stock had all been paid in, the president and secretary neglected to file with the secretary of state their affidavit that not less than twenty per cent of the authorized capital had been paid in cash or in property equivalent to cash. From the time the articles of association were signed to the time the charter was filed work went on, under the management of Gaines, substantially as if the corporation were already organized. A pump house was built, a pump was operated, a mill was erected, and other work was done in anticipation of fulfillment of the purposes expressed in the articles of association. The money for this work was furnished by the Dunlap and Council Grove parties as advancements on their stock and was expended by Gaines.

The plaintiff supplied merchandise ordered by Gaines, on credit, from August 2, 1911, to August 15, 1912. Under the direction of Gaines the merchandise was charged to J. B. Lamb & Company until November 29, 1911, when by direction of Gaines the account was changed to the Harmon Mining Company. The account sued on included $141.12 charged to J. B. Lamb & Company and $423.31 charged to the Harmon Mining Company. At the trial there was sufficient evidence to take the case to the jury upon the question of the liability of the defendants as partners until the corporation was organized and the account on the plaintiff's books was changed. After that there is no pretence that goods were furnished on the individual credit of the incorporators. The court instructed the jury, however, that the failure of the corporation to file the affidavit of its president and secretary referred to rendered the incorporators liable for the remainder of the account. The substantial legal question involved relates to the correctness of this instruction.

The statute reads as follows:

"The existence of a private corporation shall begin on the day the charter is filed in the office of the secretary of state, and shall continue for a period of fifty years; the certificate of the secretary of state under the seal of his office shall be evidence of the time of such filing: *Provided*, That no corporation for profit, excepting railroad corporations, banking corporations, and building and loan associations, shall commence business until it shall have filed with the secretary of state an affidavit, made by its president or secretary, setting forth that not less than twenty per cent of its authorized capital has been paid in actual cash or in property equivalent thereto. A schedule of such property shall in such case accompany the affidavit." (Gen. Stat. 1909, § 1709.)

The argument in favor of the instruction is based upon the language used by the court in the opinions in the cases of *Walton v. Oliver*, 49 Kan. 107, 30 Pac. 172, and *Bank v. Sheldon*, 86 Kan. 460, 121 Pac. 340.

In the Walton case the facts and the conclusion of the court are succinctly stated in the syllabus, which reads as follows:

"Where a charter is duly acknowledged and filed in the office of the secretary of state, naming certain persons as the directors of a corporation for the first year, but no capital stock is ever subscribed or paid, and no other steps are taken to complete the organization, and there is an entire failure upon the part of the incorporators to comply with the provisions of the law for the government of corporations, the organization can not be said to have such a corporate existence as would authorize its directors to enter into any kind of a contract, transact any business or incur any liability in the name of the corporation; and where a liability or debt is incurred before the organization is completed, the persons assuming to act as directors are personally liable."

In the opinion it was said:

"The words 'organize' or 'organization' have a well-understood meaning; and as we construe them they mean the election of officers, providing for the subscription and payment of the capital stock, the adop-

tion of by-laws, and such other steps as are necessary to endow the legal entity with the capacity to transact the legitimate business for which it was created. In this sense the corporation was not fully organized. While it had an existence, the organization was never completed so that the corporation could do business." (p. 112.)

The plaintiff concludes that because the statutory affidavit prerequisite to the lawful commencement of business was not filed, the organization of the Harmon Mining Company was never completed and individual liability of the defendants resulted.

In the Sheldon case the syllabus reads as follows:

"1. Without any statutory provision the law is that where a number of persons assume to organize.themselves into a corporation and fail to take the steps which are essential to their becoming incorporate they are liable as partners for debts incurred by them in the corporate name.

"2. Where a charter was regularly issued for a corporation under the laws of the territory of Arizona, but no meetings were called or held for the election of officers, and no books were opened and no capital stock was subscribed for or paid, held, that the organization was not completed, and that the incorporators were individually liable for debts incurred in the corporate name."

In the opinion the case of *Wechselberg v. Flour City Nat. Bank,* 64 Fed. 90, 97, was cited, and it was said:

"That case differs from this only because a statute of Wisconsin provided that no corporation should transact business with any other than its members until a certain percentage of its stock should be subscribed and paid, and imposed a liability upon the stockholders for debts incurred in violation of the provision. We think, however, that the same rule should be applied irrespective of statutory provisions. (3 Thomp. Com. on the Law of Corp. § 2992.)" (86 Kan. 467.)

The plaintiff concludes that the statutory requirement of an affidavit that stock has been paid in before

business can be transacted is substantially equivalent to the provision of the Wisconsin statute, and that under the opinion of the court the penalty of individual liability follows upon nonobservance, although not affixed by statute as in Wisconsin.

In the Walton case the question was, What makes true corporate existence? It was held that a charter is not enough. Organization, as contemplated by the statute, must be substantially perfected. The expression in the opinion, "such other steps as are necessary to endow the legal entity with the capacity to transact the legitimate business for which it was created," (p. 112) referred solely to such steps as were necessary to complete organization to the point that genuine and not merely formal or paper existence was created. This is clearly indicated by the syllabus, which makes the decision turn on "corporate existence" and "organization . . . completed," and by the following language from the opinion preceding and following that quoted above:

"The statute only provides that the existence of the corporation shall date from the time of filing the charter, and the certificate of the secretary of state shall be evidence of the time of such filing. (Gen. Stat. 1889, § 1166.) The statute is silent as to the organization. The rule is well established that a corporation must have a full and complete organization and existence as an entity, and in accordance with the law to which it owes its origin, before it can assume its franchise or enter into any kind of contract or transact any business; and whatever be the mode prescribed by the act of incorporation, a substantial compliance with all the provisions of the law under which it is created is required before the corporation can be said to have such an existence as will entitle it to do business. . . . Now it is conceded in this case that nothing was done to perfect the organization after the charter was filed. A corporation cannot act without officers and agents, and it is powerless to do anything until its incorporators or promoters give it the means whereby it can act. . . . While, in this case, the charter

was filed with the secretary of state, the corporation had no officers outside of the directors named for the first year. No portion of the capital stock had been subscribed and no books opened, as required by ¶ 1173 of the General Statutes of 1889. In fact, nothing had been done to complete the preliminary business of organizing the corporation. We do not understand that a corporation can proceed to the transaction of business without any portion of its capital stock being subscribed or paid." (49 Kan. 112, 113.)

In the Sheldon case the controlling words of the first paragraph of the syllabus are "fail to take the steps which are essential to their becoming incorporate," and the determining fact in the second paragraph of the syllabus is that "the organization was not completed." The federal case cited was decided under a statute which made subscription to one-half of the capital stock and payment of twenty per cent of the capital stock a condition precedent to corporate existence, the language being, "Every such corporation, when so organized, shall be a body corporate," and have "the powers of a corporation conferred by these statutes." (64 Fed. 90, 93.) Under the decision in the Walton case subscription to capital stock constituted a condition precedent to becoming incorporated, and Thompson in his Commentaries merely states the principle of that decision, that individual liability rests upon incorporators who fail to bring the contemplated corporation into existence. The Thompson reference reads as follows:

"Outside of the question of the existence of such statutes, and chiefly in jurisdictions where they do not exist, there is a class of cases holding to the simple, just, and easily applied doctrine that where a number of coadventurers assume or attempt, under the provisions of a general statute, to organize themselves into a corporation, and fail to take the steps which that statute makes essential to their becoming incorporate, and assume to contract corporate debts without having taken such steps, they are liable for such debts as partners." (3 Com. on the Law of Corp. § 2992.)

In both the Kansas cases which have been considered and in the federal case the crowning defect in the organization proceedings which effectually precluded corporate existence was the utter absence of capital stock. The promoters left Hamlet entirely out of the play.

The result is that neither conclusion of the plaintiff is warranted by the decision upon which it is based, and the effect to be given the statute under interpretation upon the liability of the defendants is an open question.

Individual liability is imposed upon corporation promoters for debts which they have incurred when they fail to take the steps essential to incorporation. If incorporation occur, there is no liability in the absence of a statute imposing it. In this case incorporation was an accomplished fact. A charter was procured and filed, capital stock was fully subscribed and paid in, officers were elected and managing agents were appointed, by-laws were adopted, and every requirement of the law essential to complete corporate organization was met. The statute imposes no duty upon incorporators. The filing of the affidavit is not a step in corporate organization or a condition precedent to corporate existence. The statute presupposes valid corporate existence and makes it the duty of the corporation itself to file the affidavit of its president and secretary showing the prescribed facts. Failure to do this does not constitute delinquency on the part of the promoters or stockholders. It is a corporate fault, and not a personal fault of incorporators who have done everything required of them as such. No penal consequences can be visited on them in the absence of a statute and the statute is silent as to the consequence flowing from its nonobservance.

When statutes are framed in this way it is well settled that contracts made by authorized corporate agents on behalf of the corporation are valid obligations of the corporation. Persons dealing with the corporation

can not object that the statute was not observed. The state alone can complain, and its remedy is to discipline the corporation according to some common-law method. (*The State v. Book Co.*, 69 Kan. 1, 76 Pac. 411, and cases cited in the opinion; *Beal v. Childress,* ante, pp. 109, 112, 139 Pac. 1198; *Whitney v. Wyman,* 101 U. S. 392; *First National Bank of Salem v. Almy,* 117 Mass. 476.)

It follows- that the instruction given to the jury relating to the personal liability of the defendants for the Harmon Mining Company's portion of the account sued on was incorrect. The jury having returned special findings of the separate amounts due from J. B. Lamb & Company and the Harmon Mining Company, the cause is remanded to the district court with direction to modify its judgment according to the foregoing statement of the law.