No. 26,731.

L. E. DOUGLASS, *Appellee*, v. THE MIDLAND OIL COMPANY and J. M. BROWN (O. L. CULLY, *Appellant*).

#### SYLLABUS BY THE COURT.

1. CORPORATIONS — *De Facto Corporations* — *Capacity to Contract*. A *de facto* corporation has the same capacity as a corporation *de jure* to enter into contracts, and it is sufficient to show a *de facto* corporate existence in order to sustain an action against an association as a corporation upon a contract made by it.

2. SAME—*De Facto Corporations*—*Sufficiency of Organization*. The steps taken by an association of persons towards the organization of the corporation involved is deemed to be sufficient to impart the character of a corporation *de facto*.

3. GUARANTY—*Consideration*—*Effect of Time of Making Guaranty*. Where a contract of guaranty is made contemporaneously with the principal contract and is a part of it, the consideration of the latter is sufficient to uphold the guaranty.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed July 10, 1926. Affirmed.

*Carr W. Taylor*, of Hutchinson, for the appellants.

*A. C. Malloy, R. C. Davis* and *Warren H. White*, all of Hutchinson, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by L. E. Douglass to recover $5,000 from the Midland Oil Company on a drilling contract, and also against J. M. Brown and O. L. Cully, who had guaranteed payment for the drilling as it progressed. A judgment was recovered by plaintiff against Cully, and he appeals.

A number of persons became interested in a tract of land in which it was hoped to find oil or gas, and some of them had procured a lease of the tract. It was arranged that they should form a corporation, turn in the lease in payment of a block of stock, sell additional stock to others, and thus procure funds with which to develop the lease. Before the organization of the corporation was completed and the charter was obtained it was arranged that development should begin, and Douglass, the plaintiff, was asked to undertake the drilling of the well on the lease. A contract was prepared which pro-

. Corporations, 14a C. J. pp. 204 n. 21, 208 n. 29, 214 n. 92; 7 R. C. L. 62, 67. Guaranty, 28 C. J. p. 917 n. 49; 12 R. C. L. 1077.

vided that Douglass should drill a well, which was to be spudded in on October 8, 1924, and continued with reasonable diligence until it was performed, and he was to furnish all the necessary material, equipment and appliances and to receive as consideration, cash payment of $33,400; the company was to make a $20,000 escrow deposit in a bank that was named, before the well reached a depth of 1,500 feet, and it was agreed that the company would pay Douglass $5,000 when the well was drilled to a depth of 500 feet; $3,400 when it was drilled to 1,500 feet; and another payment of $5,000 when it was drilled to a depth of 2,500 feet. It was stipulated that in the event of oil or gas being found in paying quantities, the company should pay Douglass for the rig and casing in the well at prices that were named, and further that if he failed to properly perform his part of the contract and the company was not in default, all payments previously made should be returned to the company. In behalf of the company, the contract was signed by Emery B. Colson, as trustee, but Douglass declined to sign the contract because the corporation had not yet been organized and no stock therein had been disposed of. Accordingly the following guarantee was made. It was addressed to Douglass and is as follows:

"We are writing you this letter to state that we the undersigned do hereby guarantee to you the payment of $5,000 as per your contract with the Midland Oil Company, the said $5,000 to be paid to you when you have drilled to a depth of at least 500 feet, according to the contract as stated above.

Yours very truly,          J. M. Brown,
O. L. Cully."

Upon the execution of this guaranty Douglass signed the contract and proceeded to drill the well, beginning within the stipulated time. He drilled to a depth of 600 feet, and in the meantime the charter for the oil company had been obtained, but the company had not disposed of its stock, and being in default of payment and Cully and Brown having failed to pay under the guaranty contract, the drilling was discontinued. The lease which had been obtained became forfeited and the company itself insolvent. This action was then begun upon the guaranty contract, and Brown having disappeared and his whereabouts unknown, no service was obtained upon him. Cully contends that the oil company was never in fact a legal corporation; that no showing was made that Cully had any relationship whatever with the oil company or that he had any interest in it, and therefore the so-called contract was without validity and the guaranty without consideration. The case was tried to a jury and findings of fact

29—121 Kan.

were made to the effect that Cully did not sign the contract on an agreement of Douglass that additional signatures would be obtained to it, that Douglass had no notice or knowledge that the guaranty was not to be delivered until additional signatures were obtained, and that Douglass had drilled the well to a depth of 500 feet in reliance upon the guaranty.

By an objection to the admission of any evidence on the ground that the petition failed to state a cause of action against defendant and upon a demurrer to plaintiff's evidence, he raises two principal questions in the case: First, that the contract of plaintiff with the oil company was invalid for the reason that the company had no corporate existence; and second, that there was no consideration for the promise of guaranty. It was alleged in the petition, and the evidence produced tended to show, that an association of persons, including Cully, proceeded to organize a corporation designated as the Midland Oil Company, that a charter was applied for and obtained and an application made to state authorities for permission to sell the securities issued by the company. Leases had been secured and the contract for drilling was made which was signed by one of the association as trustee for the company. While the incorporation had not been fully completed, officers had been chosen, the interests of the parties in the company were determined, the leases were turned in as assets of the company on a basis agreed upon and for which shares of stock to specified persons were to be issued and delivered. It therefore appears that the association had the essential elements of a *de facto* corporation, the existence of which could not be collaterally attacked, and the fact that it was subject to attack by the state in a direct proceeding of ouster could not operate to relieve the company from liability upon a contract. It has been held in effect that a *de facto* corporation has the same capacity as a *de jure* one to enter into contracts, and that proof of a *de facto* corporate existence is sufficient where the validity of a contract by a body of men claiming to be a corporation is in issue. (*C., K. & W. Rld. Co. v. Comm'rs of Stafford County*, 36 Kan. 121, 12 Pac. 593. See, also, *Pape v. Capitol Bank*, 20 Kan. 440; *Reisner v. Strong*, 24 Kan. 410; *A. T. & S. F. Rld. Co. v. Wilson, Treas.*, 33 Kan. 223, 6 Pac. 281; *In re Short*, 47 Kan. 250, 27 Pac. 1005; *Levitt v. Wilson*, 72 Kan. 160, 83 Pac. 397; 1 Fletcher on Corporations, 530, 531, 628.) Aside from this feature of the case Cully was one of the promoters of the project, had an interest in the lease and also

in the project, and the plaintiff had a right of action against him. In respect to the contract of guaranty plaintiff insisted that his obligation was based on the condition that the signatures of others interested in the company should be first obtained, but the findings of the jury have settled this dispute against his contention. The argument that if the corporation had no existence no contract had in fact been executed, and the guaranty must therefore fall with the contract, is answered by the fact that there was a corporation *de facto* and that it had the capacity to make a binding contract.

Upon the question of consideration for the guaranty there is little room for contention. The guaranty was practically concurrent with the drilling contract and formed a part of a single transaction. There was sufficient consideration for the principal contract, and the guaranty having been made contemporaneously with it the consideration for the principal contract is sufficient to sustain the contract of guaranty. (*Jones & Bro. Co. v. Kuhn,* 34 Kan. 414, 8 Pac. 777; 28 C. J. 917; 12 R. C. L. 1077.)

Objections to the admission of evidence and to instructions requested and given have been considered and found to be without merit.

The judgment is affirmed.