NOT DESIGNATED FOR PUBLICATION

No. 112,617

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ICON AGENT, LLC,
*Appellee*,

v.

KANZA CONSTRUCTION, INC., a Kansas Corporation,
*Defendant*,

STEVEN HUTCHINSON and MARY HUTCHINSON,
*Appellants*,

and

KANZA SERVICES, LLC, a Kansas Limited Liability Company,
as Guarantors of Kanza Construction, Inc., Individually,
*Defendant*.

MEMORANDUM OPINION

Appeal from Labette District Court; ROBERT J. FLEMING, judge. Opinion filed January 15, 2016. Affirmed.

*Steven G. Hutchinson* and *Mary F. Hutchinson*, appellants pro se.

*Mark T. Benedict* and *Kyle Kitson*, of Husch Blackwell LLP, of Kansas City, Missouri, and *Scott M. Esterbrook* and *Lauren S. Zabel*, of Reed Smith LLP, of Philadelphia, Pennsylvania, for appellee.

Before MCANANY, P.J., POWELL, J., and DAVID J. KING, District Judge, assigned.

1

*Per Curiam*:  This case involves a $12.5 million loan to Kanza Construction, Inc., which was secured by equipment owned by Kanza Construction and guaranties from Steve and Mary Hutchinson and Kanza Services, LLC, a sister company controlled by Steve Hutchinson. The loan was made by a group of lenders who designated Icon Agents, LLC, as their agent in the transaction. As the agent for the lenders, Icon was responsible for holding the collateral and administering and enforcing the loan agreement on behalf of its principals.

*Facts*

The borrower, Kanza Construction, was owned by Steve Hutchinson. Hutchinson had more than 20 years of experience in the heavy and rail construction industries. He was formerly licensed to practice law in the State of Texas, where he had been engaged in commercial litigation for 3 years. Hutchinson approached Icon for working capital for Kanza's railroad business. Kanza was a railroad contractor engaged in several lines of business, including maintaining tamping equipment, tamping railway lines, manufacturing and remanufacturing tamping equipment, and manufacturing and repairing locomotive equipment. These loans were prompted by Kanza's need for cash in order to meet its customers' timetables for the completion of new work.

In March 2012, Kanza entered into a $12.5 million Term Loan and Security Agreement with the lenders and Icon, the lenders' agent. The loan was collateralized by a security interest in substantially all of Kanza's property and assets, including equipment, as well as unconditional guaranties from Kanza Services and from Hutchinson and his wife. The loan agreement identified Icon as "ICON AGENT, LLC, a Delaware limited liability company, as agent (in such capacity, 'Agent') for the Lenders."  The loan agreement provided that Icon had the right to "exercise all remedies given to Agent and other Lenders with respect to the Collateral."  This authority encompassed "collection,

including deficiency collections" and "any litigation, dispute, suit, proceeding or action . . . and an appeal or review thereof."

Icon perfected the security interest in Kanza's property by filing a UCC-1 with the Kansas Secretary of State.

Kanza defaulted on the loans within 1 month of the closing. Starting in June 2012, Icon made several written demands for payment and for Kanza to deliver up the collateral. Icon also demanded payment from the guarantors on their guaranties.

Kanza entered into an auction agreement with Ritchie Brothers Auctioneers to sell some of its equipment which was part of the collateral. The auctions took place in August, September, and December 2012. The auction proceeds were turned over to Icon and applied to the debt. There nevertheless remained a significant unpaid balance and in January 2013 Icon sent a final demand letter to Kanza for payment and for Kanza to turn over the remaining collateral.

*Suit*

In January 2013, Icon commenced this action against Kanza and the guarantors and obtained possession of some of the remaining collateral pursuant to a replevin order from the district court. This remaining collateral was sold at auction in March 2013 by Ritchie Brothers, the same auctioneers Kanza had used earlier. This further reduced but did not extinguish the outstanding loan balance.

Kanza and the guarantors asserted counterclaims against Icon for breach of contract, breach of duty of good faith and fair dealing, negligent misrepresentation, and tortious interference with business relations. Icon moved for sanctions when the

3

defendants failed to fully comply with the court's discovery orders. At a hearing on the sanctions motion, the district court ruled that the defendants would not be allowed "to present any evidence, either by way of testimony or the introduction of exhibits, that hasn't been specifically identified during discovery." At the time the sanctions were issued, the defendants were represented by counsel, but counsel withdrew in January 2014 and the Hutchinsons proceeded pro se. Kanza and Kanza Services were without counsel.

In February 2014, Icon moved for summary judgment. In May 2014, the Hutchinsons filed their response to the motion. That same day, Kanza filed a document purporting to assign its claims against Icon to Steve Hutchinson.

The Hutchinsons' response to the summary judgment motion completely ignored Supreme Court Rule 141 (2015 Kan. Ct. R. Annot. 242). Their response also purported to respond on behalf of Kanza and Kanza Services. Although Steve Hutchinson had previously been licensed to practice law, he was not a licensed attorney at the time of the instant action, so the district court refused to permit Kanza and Kanza Services to proceeding pro se or to permit Hutchinson to represent them.

At the hearing on Icon's summary judgment motion, the court found that the corporate defendants had not submitted a response and granted summary judgment against them.

Steve Hutchinson presented the court with the so-called assignment to him of the corporate defendants' counterclaims against Icon. The assignment had not been disclosed during discovery, as required by the court's earlier sanctions order. Icon argued that a corporation cannot assign its claims to an individual in order to circumvent the requirement that a corporation be represented in court by counsel. The district court

4

rejected the assignment of claims, ruled that the Hutchinsons' response to the summary judgment motion did not comply with Supreme Court Rule 141, and found that the facts were uncontroverted. The court granted summary judgment in favor of Icon on all issues except whether the March 2013 auction sale of the remaining collateral was commercially reasonable.

At the bench trial on this remaining issue, the acting regional sales manager for Ritchie Brothers testified about the auction procedure, that Ritchie Brothers was the world's largest industrial auction company, and about the prior sales Ritchie Brothers had conducted for Kanza. Icon introduced evidence showing total proceeds of the March 2013 auction of $1,375,250 gross and $1,185,827.67 net, including a breakdown of the price per item.

Steve Hutchinson, the only defendant to appear at trial, testified in his own defense. The district court excluded on hearsay grounds two appraisals that Hutchinson offered as evidence of the value of the collateral. The district court provisionally allowed Steve Hutchinson, as Kanza's sole stockholder, to render an opinion on the value of the collateral Kanza owned before the auction. But the district court found Hutchinson's opinion not to be credible and lacking in foundation because it was based on the previously excluded reports rather than his own opinion and experience.

At the conclusion of the trial, the district court entered a deficiency judgment in favor of Icon in the amount of $7,224,613.59 and found that the collateral had been sold in a commercially reasonable manner. The Hutchinsons appeal.

*Analysis*

With respect to the Hutchinsons' complaints about the summary judgment

5

proceedings, we consider the substance of the motion de novo and apply the same standards which the district court applied. Those standards are well known to the parties and are set forth in detail in *Stanley Bank v. Parish*, 298 Kan. 755, 759, 317 P.3d 750 (2014).

■ *Standing*

The Hutchinsons argue that the district court erred in granting Icon summary judgment on the Hutchinsons' affirmative defense that Icon had no standing to pursue the claims of the lenders.

An action must be prosecuted in the name of the real party in interest. K.S.A. 2014 Supp. 60-217 defines parties who may bring suit in their own name, even when the suit is for the benefit of another, without joining the party for whose benefit the action is brought. K.S.A. 2014 Supp. 60-217(a)(1)(H) specifically permits a party to sue in its own name if it is "a party with whom or in whose name a contract has been made for another's benefit." Icon did not enter into the loan agreement for its own benefit, but for the benefit of the lenders whom it represented.

In *Curo Enterprises v. Dunes Residential Services, Inc.*, 51 Kan. App. 2d 77, 83-85, 342 P.3d 948 (2015), the court held that an agent may sue in its own name to enforce an agreement made on its principal's behalf. As is the case with Icon, the agent in *Curo* disclosed that it was suing to enforce the contract on behalf of its principal and the contract expressly authorized the agent to enforce the contract on the principal's behalf.

The only case cited by the Hutchinsons to support their position is an Alabama bankruptcy court decision which was reversed. See *In re O'Dell*, 251 B.R. 602 (Bankr. N.D. Ala. 2000), *rev'd* 268 B.R. 607 (N.D. Ala. 2001). In reversing the decision, the court

6

in the second *O'Dell* case held that "[a]n agent authorized by its principal to pursue and protect the interests of the principal's claim can lawfully defend an objection to said claim on behalf of the principal." 268 B.R. at 619.

In their reply brief, the Hutchinsons cite *Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 216 P.3d 158 (2009), which involved the Mortgage Electronic Registration System. But in *Landmark* the court found MERS, the purported agent, to be "more akin to that of a straw man rather than to a party possessing all the rights given a buyer." 289 Kan. at 539. This was because "the mortgage document consistently refers only to rights of the lender, including rights to receive notice of litigation, to collect payments, and to enforce the debt obligation. The document consistently limits MERS to acting 'solely' as the nominee of the lender." 289 Kan. at 539-40. Unlike MERS, Icon was expressly given the right to pursue all remedies on behalf of the lenders.

Icon is the agent disclosed in the contract with actual and apparent authority to represent the interests of the lenders. Icon's actions were expressly authorized under the terms of the loan agreement and under K.S.A. 2014 Supp. 60-217(a)(1)(H). The Hutchinsons did not point to any facts to dispute Icon's position that it was expressly acting as the lenders' agent and had standing to bring suit on behalf of the lenders. The district court properly granted summary judgment to Icon on this affirmative defense.

■ *Valid Security Interest*

The Hutchinsons assert that the court erred in granting summary judgment dismissing their defense that Icon did not have a valid security interest in the collateral. The Hutchinsons' entire argument on this issue is as follows: "Plaintiff Agent, merely an 'agent' of the secured Lenders, had no valid security interest in Defendant Kanza's equipment and no right to seize Defendant Kanza's equipment in the name of Plaintiff

7

Agent. The analysis in Issue '1' above is hereby adopted and incorporated by reference." Issue 1 is the real party in interest issue which we have already addressed.

K.S.A. 2014 Supp. 84-9-102(72)(E) provides that a security interest may be held by "a trustee, indenture trustee, agent, collateral agent, or other representative in whose favor a security interest . . . is created or provided for."

The paucity of the Hutchinsons' briefing on this issue indicates that the issue has been abandoned. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013). The district court properly granted summary judgment to Icon on this issue.

■ *Consideration for the Guaranty of Mary Hutchinson*

The Hutchinsons claim the court erred in dismissing the defense that there was no consideration for Mary Hutchinson's guaranty. They argue that she "'had nothing to do with the transaction'" and she "'had no participation in Kanza, and she received nothing from this transaction.'"

Consideration for a contract "is presumed unless the lack of consideration is raised as an affirmative defense and is proved by substantial competent evidence." *State ex rel. Ludwick v. Bryant*, 237 Kan. 47, 50, 697 P.2d 858 (1985); see K.S.A. 16-107; K.S.A. 16-108. A contract must be supported by consideration in order to be enforceable. 237 Kan. at 50; *Mitchell v. Miller*, 27 Kan. App. 2d 666, 672, 8 P.3d 26 (2000). Consideration is defined as some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility, given, suffered, or undertaken by the other. 17A Am. Jur. 2d, Contracts § 102. To satisfy the requirement of consideration, "it is not necessary that a benefit should accrue to the promisor; it is sufficient that something

8

valuable flows from the person to whom the promise is made and that the promise is the inducement to the transaction." 17A Am. Jur. 2d, Contracts § 113.

Consideration need not be something of pecuniary value or reducible to such value in order to support a contractual promise. See *In re Estate of Shirk*, 186 Kan. 311, 321-22, 350 P.2d 1 (1960); *Murphy v. Convey*, No. 90,125, 2004 WL 421991, at *3 (Kan. App. 2004) (unpublished opinion), *rev. denied* 278 Kan. 846 (2004). Here, the district court concluded that the consideration for Mary's guaranty was the agreement of the lenders to loan $12.5 million to Kanza. Under a surety agreement, the consideration that is provided to the principal is the consideration that supports the surety. The consideration need not flow, and generally does not, directly to the surety. Rather, sufficient consideration exists when a contract of guaranty is made contemporaneously with and is part of the principal contract. *Douglass v. Midland Oil Co.*, 121 Kan. 448, Syl. ¶ 3, 247 P. 1048 (1926). "Where a third party promises in writing to pay the debt of another any benefit or inconvenience or detriment to the creditor is a sufficient consideration to support such promise or guaranty." *Woodman v. Millikan*, 126 Kan. 640, Syl. ¶ 3, 270 P. 584 (1928).

The Hutchinsons cite 12 C.F.R. § 202.7(d) in support of their argument. But this regulation relates to the Equal Credit Opportunity Act, it does not deal with the issue of consideration of a guarantor, and it therefore is irrelevant. The $12.5 million loan to Kanza was sufficient consideration under Kansas law for Mary's guaranty.

■ *Necessary Parties*

The Hutchinsons assert that the lenders are necessary parties to this action. But they merely reassert the argument raised on the last two issues without any additional authorities or arguments. This argument fails.

■ *Exclusion of Evidence in Summary Judgment Proceedings*

The Hutchinsons contend the district court erred in applying Supreme Court Rule 141 (2015 Kan. Ct. R. Annot. 242) and excluding its exhibits and affidavits from evidence during its consideration of the summary judgment motion.

The substance of Supreme Court Rule 141 is well known to the parties and need not be spelled out here. In responding to the motion, the Hutchinsons failed to controvert the facts asserted by Icon by including a concise summary of conflicting testimony or evidence; by including any additional genuine issues of material fact which would preclude summary judgment; and by making precise references to the transcripts, depositions, interrogatories, admissions, affidavits, exhibits, or other supporting documents in the record. Thus, the district court adopted Icon's statement of material uncontroverted facts as admitted by the Hutchinsons and rejected the Hutchinsons' unsupported claimed facts.

Pro se litigants are not excused from compliance with Rule 141. As stated in *Mangiaracina v. Gutierrez*, 11 Kan. App. 2d 594, 595-96, 730 P.2d 1109 (1986):

> "A pro se litigant in a civil case is required to follow the same rules of procedure and evidence which are binding upon a litigant who is represented by counsel. Our legal system cannot function on any basis other than equal treatment of all litigants. To have different rules for different classes of litigants is untenable. A party in civil litigation cannot expect the trial judge or an attorney for the other party to advise him or her of the law or court rules, or to see that his or her case is properly presented to the court. A pro se litigant in a civil case cannot be given either an advantage or a disadvantage solely because of proceeding pro se."

The fact that the Hutchinsons were pro se does not excuse them from compliance with Rule 141, particularly when Steve Hutchinson was formerly a licensed and practicing attorney. See *O'Neill v. Herrington*, 49 Kan. App. 2d 896, 906-07, 317 P.3d 139 (2014), *rev. denied* 301 Kan. ___ (January 15, 2015). The district court did not abuse its discretion in admitting all of Icon's uncontroverted facts and in excluding the Hutchinsons' exhibits and affidavits from consideration.

■ *Choice of Law*

The Hutchinsons contend that the district court erred in applying Kansas rather than New York law in granting summary judgment to Icon. The loan agreement contains a choice-of-law provision designating New York law. But no issue arises when the laws of the two states do not differ on matters at issue. *State v. Francis*, 282 Kan. 120, 134, 145 P.3d 48 (2006); *AT&SF Ry. Co. v. Stonewall Ins. Co.*, 275 Kan. 698, 731, 71 P.3d 1097 (2003).

Here, the Hutchinsons contend that there were oral agreements and additional proposals that altered the terms of the loan agreement. Steve Hutchinson claimed that New York law applied to the statute-of-frauds question. When the court asked him how the New York statute of frauds differed from the Kansas statute of frauds, Hutchinson responded: "I do not [know]. I assume that there is [a difference], or counsel would have asserted New York law. They're very sharp. But I do not know."

In their response to Icon's summary judgment motion, the Hutchinsons had the burden to establish their choice-of-law argument. Because they failed to identify any difference between Kansas law and New York law, they waived this issue. See *Stanley Bank*, 298 Kan. at 759. The district court did not err in granting summary judgment to Icon on the Hutchinsons' counterclaims.

11

■ *Ignored Issues of Material Fact*

The Hutchinsons' entire argument on this issue follows:

"Defendants incorporate by reference the Analysis above in Issue '6'. Assuming Defendants are allowed to offer Affidavit and Exhibit evidence in response to Plaintiff Agent's Motion for Summary Judgment, then the Trial Court erred in failing to recognize numerous genuine issues of material fact in elements of Plaintiff Agent's Motion for Summary Judgement and Defendants' Counterclaims and Affirmative Defenses."

First, we have already dealt with this issue and resolved it against the Hutchinsons. Further, their vague assertion in their brief does not satisfy the requirement that an issue be adequately briefed in order to avoid being deemed abandoned or waived. A point incidentally raised in a brief is insufficient to preserve the issue for review. *Friedman*, 296 Kan. at 645.

■ *Assignment of Defenses and Counterclaims*

The Hutchinsons argue that the district court erred in rejecting the assignment of Kanza's affirmative defenses and counterclaims to Steve Hutchinson. The district court rejected Kanza's purported assignment of claims for two reasons: (1) The document was filed after the close of discovery and violated previously imposed sanctions against Hutchinson for discovery violations; and (2) the purported assignment was an attempt to circumvent the rule that a corporate entity must be represented by counsel.

The sole authority cited by the Hutchinsons is *Bolz v. State Farm Mut. Ins. Co.*, 274 Kan. 420, Syl. ¶ 1, 52 P.3d 898 (2002), which provides the general rule that all choses of action, except for torts, are assignable. But they provide no contrary authority

12

that addresses the district court's specific reasoning in this case—that the assignment violated the discovery order and that the purported assignment was made to circumvent the attorney representation rule.

The Hutchinsons have not appealed the district court's sanctions order and have provided no argument that the district court abused its discretion by enforcing its discovery order. The district court acted within its discretion as provided in K.S.A. 2014 Supp. 60-237(b)(2).

Further, Kansas law requires that a corporation must be represented by a Kansas licensed attorney. *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 503, 14 P.3d 1149 (2000); *Atchison Homeless Shelters, Inc. v. Atchison County*, 24 Kan. App. 2d 454, 455, 946 P.2d 113, *rev. denied* 263 Kan. 885 (1997). Courts from other jurisdictions have rejected similar attempts to avoid the requirement of legal counsel for corporations in court. See *Biggs v. Schwalge*, 341 Ill. App. 268, 271, 93 N.E.2d 87 (1950) (the plaintiff could not, by the subterfuge of an assignment from the corporation, avoid the prohibition against a corporation's acting in court by an attorney in fact but not in law); *Yogi Bear Membership Corp v. Stalnaker*, 571 N.E.2d 331, 333-34 (Ind. App. 1991) (the record contained no evidence that the assignment of debt to a corporate employee was anything other than an attempt to circumvent the attorney representation requirement); *Property Exchange & Sales v. Bozarth*, 778 S.W.2d 1, 2-3 (Mo. App. 1989) (corporation could not avoid the general rule against allowing it to appear by a nonattorney by assigning its cause of action to one of its officers in his individual capacity). In *GLN Compliance Group, Inc. v. Ross*, 482 Fed. Appx. 313, 314 n.1 (10th Cir. 2012) (unpublished opinion), the court stated:

> "[T]he rule in this circuit is that a corporation may appear in federal court only through an attorney See *Tal v. Hogan*, 453 F.3d 1244, 1254 (10th Cir. 2006). Naekel claims that

13

GLM transferred to him all rights, obligations, and responsibilities relating to this civil action; however, courts have rejected such assignments as 'no more than a procedural subterfuge to avoid court rules prohibiting corporations from appearing without legal representation.' [Citations omitted.]"

The district court did not err in rejecting the assignment of Kanza's affirmative defenses and counterclaims to Hutchinson.

■ *Restricting the Trial to Commercial Reasonableness of Sale*

It is unclear whether the Hutchinsons are objecting to the district court's ruling at summary judgment that the trial would be limited to the commercial reasonableness of the March 2013 sale or whether the Hutchinsons are objecting to evidentiary rulings at trial.

Because their issue statement refers to the "'commercial reasonableness' of numerous forced sales," it appears at first glance that the Hutchinsons are objecting to the district court's ruling on summary judgment that the trial would be limited to the commercial reasonableness of the March 28, 2013, sale. But then the other sales were conducted pursuant to contracts between Kanza and Ritchie Brothers.

But the Hutchinsons state in their brief that the trial court erred in refusing to allow testimony at trial on the commercial reasonableness of these other sales. That is the extent of their argument on the issue, other that their citation to cases that state the rule that collateral must be sold in a commercially reasonable manner before a deficiency judgment can be entered. The Hutchinsons provide no argument as to how the earlier sales were not commercially reasonable. Thus, they have failed to show that the district

14

court erred by restricting the trial to the issue of the commercial reasonableness of the final replevin sale.

■ *Commercial Reasonableness of the Final Collateral Sale*

The Hutchinsons argue that the district court erred in entering a deficiency judgment in favor of Icon when there was no evidence offered to support the commercially reasonable value of the assets sold.

When reviewing a mixed question of fact and law, we apply a bifurcated review standard. The trial court's factual findings are reviewed under the substantial competent evidence standard. Its conclusions of law based on those facts are subject to unlimited review. See *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014).

The Hutchinsons do not point to evidence in the record supporting their position that the sale was not commercially reasonable. Rather, they cite the following:  (1) Craig Jackson, managing director of Icon, was unable testify to the fair market value of the equipment at the time the loan was made; and (2) Al Engelstad, acting regional sales manager with Ritchie Brothers, was not an expert on the specific pieces of equipment sold and the value of those pieces at the time of the final sale.

K.S.A. 2014 Supp. 84-9-627(b) provides:

"**Dispositions that are commercially reasonable.** A disposition of collateral is made in a commercially reasonable manner if the disposition is made:
(1) In the usual manner on any recognized market;
(2) at the price current in any recognized market at the time of the disposition; or
(3) otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition."

15

In *Westgate State Bank v. Clark*, 231 Kan. 81, 92-95, 642 P.2d 961 (1982), our Supreme Court set out nine nonexclusive factors to consider in determining whether a sale was commercially reasonable:

(1) the duty to clean up, fix up, and paint up the collateral;

(2) whether disposition was made public or private;

(3) whether the collateral was disposed of wholesale or retail;

(4) whether the collateral was disposed of by unit or in parcels

(5) the creditor's duty to publicize the sale;

(6) the length of time the collateral is held prior to the sale;

(7) the creditor's duty to give notice of the sale to the debtor and competing secured parties;

(8) the actual price received at the sale; and

(9) other factors such as the number of bids received and the method employed to solicit bids.

"The determination of whether such a sale is commercially reasonable must be made on a case-by-case basis considering the *Westgate* factors and the aggregate of circumstances shown." *Union Nat'l Bank of Wichita v. Schmitz*, 18 Kan. App. 2d 403, 411, 853 P.2d 1180 (1993). The fact that a better price could have been obtained at a different time or by using a different method is not sufficient to show that the sale was not commercially reasonable. *Westgate*, 231 Kan. at 92; see K.S.A. 2014 Supp. 84-9-627.

The Hutchinsons argue that absent evidence of the exact value of the equipment sold there is "no way to determine the commercial reasonableness of the price received at the fire sale auction." But our UCC statute on commercially reasonable dispositions expresses the factors establishing a commercially reasonable sale in the alternative.

16

Here, the evidence at trial established that the sale was conducted in the usual manner for the market for such equipment and was in conformity with reasonable commercial practices among dealers in the type of property that was being sold. There was testimony that Icon selected Ritchie Brothers to perform the sale based on its experience auctioning heavy and rail equipment. There were at least 200 rail-related companies that had either attended its sales or were part of its database of equipment buyers. There was testimony that Ritchie Brothers is the world's largest industrial auction company, conducting several auctions a year at each of its auction sites where it assembles heavy equipment from numerous sources. It establishes set auction dates in order to permit it to assemble a sufficient volume of equipment to attract buyers. Ritchie Brothers had prior experience selling railroad construction equipment. Icon introduced exhibits showing data from the sale as well as marketing that occurred prior to the sale. Icon presented evidence of the sale price of each and every item of collateral sold at the auction and compared those prices to certain values asserted by Hutchinson.

There was substantial evidence to support the conclusion that the sale was conducted in a commercially reasonable manner.

■ *Expert Testimony*

The Hutchinsons claim that the district court erred in admitting expert testimony of Engelstad, an employee of Ritchie Brothers, because he testified that he was not an expert on the specialized equipment being sold and he did not have any expertise on the value of the equipment. The Hutchinsons complain that "[a]bsent knowledge of the equipment being sold and its value, the Expert had no reasonable factual basis for his opinions."

17

Expert opinion testimony is generally admissible if it aids the factfinder with unfamiliar subjects or in interpreting technical facts or if it assists the factfinder in arriving at a reasonable factual conclusion from the evidence. *State v. Gaona*, 293 Kan. 930, 948, 270 P.3d 1165 (2012). To testify as an expert, the witness must be professionally skilled or experienced in the subject about which the expert is testifying. 293 Kan. at 948; see K.S.A. 2014 Supp. 60-456 (generally governing the admissibility of lay and expert opinion testimony).

At trial, Engelstad testified as an expert in the marketing, auction, and sale of equipment, not as an expert on the value of the individual pieces of equipment. Engelstad had worked 43 years in the heavy equipment industry. His job duties included overseeing the equipment auction process from the first inspection of the equipment through the sale at auction. His experience included sales and auctions of heavy equipment for both lenders and owners. The district court properly admitted this testimony.

■ *Rejection of Claimed Business Records*

The Hutchinsons claim the district court erred in rejecting on hearsay grounds an appraisal of the equipment sold which was offered into evidence by Steve Hutchinson. Hutchinson claimed the appraisal, prepared by someone else, qualified as a business record. But he failed to lay a proper foundation for admission of the document as a business record.

"Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible." K.S.A. 2014 Supp. 60-460. A party alleging that a document is a business record must lay a proper foundation to bring the hearsay evidence within the business records exception. *State v. Brown*, 15 Kan. App. 2d 465, 468, 809 P.2d 559, *rev. denied*

18

248 Kan. 997 (1991); see K.S.A. 2014 Supp. 60-460(m). The foundation must include testimony from someone who is "'qualified by knowledge of the facts.'" 15 Kan. App. 2d at 468 (quoting *State v. Cremer*, 234 Kan. 594, 601, 676 P.2d 59 [1984]). None of this was done.

The case cited by the Hutchinsons is irrelevant. See *Mooney v. City of Overland Park*, 283 Kan. 617, 153 P.3d 1252 (2007). It does not involve the business records exception to the hearsay rule.

The district court acted within its discretion in excluding the appraisal under the hearsay exception.

■ *Attorney Fees and Costs*

There is presently outstanding a motion filed by Icon for attorney fees pursuant to Supreme Court Rule 7.07(b)(1) (2015 Kan. Ct. R. Annot. 72). In support of its motion, Icon has provided us with an affidavit indicating the nature and extent of the services rendered, the time expended on the appeal, and the factors considered in determining the reasonableness of the fee. They refer to the loan document which requires the borrower to pay reasonable attorney fees. But Icon seeks fees against the guarantors, not the borrower. The guarantors guaranteed payment of obligations of the borrower for the loan. Icon's fees and expenses were incurred as a result of this appeal. But the borrower has not appealed; it was the guarantors who appealed in this case.

But Hutchinson, one of the guarantors and the president and sole stockholder of Kanza, has asserted claims in this appeal which, if successful, would have vitiated Icon's judgment on Kanza's promissory note. For example, the Hutchinsons challenge:

19

Icon's standing in this action;

the validity of the security interest in Kanza's property;

the failure to join the lenders as necessary parties;

improper choice of laws;

exclusion of evidence at the summary judgment proceedings and at trial; and

the assignment of Kansa's defenses and counterclaims.

Icon was required to defend against these claims of error to protect its judgment against Kanza. Accordingly, we conclude that an award of attorney fees and costs for the disposition of this appeal is appropriate under the circumstances of this case.

Icon is awarded attorney fees of $470.78 and costs of $52,667 against appellants for the disposition of this appeal.

Affirmed and attorney fees and costs awarded.