No. 66,482

BARBARA OIL COMPANY, and PICKRELL DRILLING COMPANY, *et al.*, *Plaintiffs*, v. KANSAS GAS SUPPLY CORPORATION, *Defendant/ Third-Party Plaintiff/Appellee/Cross-Appellant*, and OXY OIL AND GAS USA, INC., *et al.*, *Defendants*, v. KANSAS GAS AND ELECTRIC COMPANY, *Third-Party Defendant/Appellant/Cross-Appellee*.

(827 P.2d 24)

Opinion filed February 28, 1992.

*Darrell L. Warta,* of Foulston & Siefkin, of Wichita, argued the cause, and *Timothy B. Mustaine,* of the same firm, was with him on the briefs for appellant/cross-appellee Kansas Gas and Electric Company.

*Lawrence M. Berkowitz,* of Stinson, Mag & Fizzell, of Kansas City, Missouri, argued the cause, and *John J. Miller* and *Larry L. Lorenzen,* of the same firm, *Gordon B. Stull,* of Pratt, and *W. DeVier Pierson* and *Mark Ely Greenwold,* of Pierson Semmes and Bemis, of Washington, D.C., were with him on the briefs for appellee/cross-appellant Kansas Gas Supply Corporation.

The opinion of the court was delivered by

LOCKETT, J.: Natural gas producers, Barbara Oil Co. (Barbara) and Pickrell Drilling Co. (Pickrell), sued Kansas Gas Supply Corporation (KGS), a natural gas pipeline company, and three KGS affiliates (the Oxy companies) in separate actions later consolidated at the district court level. Barbara and Pickrell claimed KGS

breached "take or pay" contracts by not buying the required minimum amounts of gas for several years commencing in 1983. KGS filed a third-party action against Kansas Gas and Electric Company (KG&E), claiming KG&E should indemnify KGS for any liability it had to Barbara and Pickrell. KGS's indemnity action claimed its failure to purchase the required minimum amounts of gas resulted either from KG&E's breach of its contract with KGS or fraud by silence, *i.e.*, KG&E intentionally failed to notify KGS of its reduced need for gas; alternatively, KGS's action claimed that when KGS extended its gas contracts with the producers it acted as the agent of KG&E and, therefore, KG&E, as principal, was obligated to indemnify KGS for its liability to Barbara and Pickrell. Before trial, KGS and the Oxy companies settled with Barbara and Pickrell. KG&E moved for summary judgment on all of KGS's claims. The trial court granted summary judgment on KGS's indemnity for breach of contract claim on grounds the statute of limitations had run, but it denied summary judgment on the agency and fraud claims. At the close of KGS's case and again at the close of all the evidence, KGS moved for a directed verdict on the agency and fraud by silence claims. The trial court denied KG&E's motions, finding there was sufficient conflicting evidence to submit the questions of agency and fraud by silence to the jury. The jury found (1) KG&E had fraudulently concealed anticipated changes in its gas requirements but KGS's fraud claim was barred by the statute of limitations and (2) when KGS extended its contracts with Barbara and Pickrell, KGS had acted as KG&E's agent. The jury awarded KGS $5,250,000.

On appeal, KG&E claims the district court should have granted its motion for a directed verdict and summary judgment because: (1) There was no agency relationship; (2) the parol evidence rule bars consideration of KGS's implied agency claim; (3) the 1984 Gas Sales Agreement extinguished any agency relationship that may have existed; and (4) KGS's agency claim is barred by the applicable statute of limitations. KG&E did not appeal the jury finding of fraud. In the event its judgment is not affirmed, KGS cross-appeals, contending its indemnity claims for KG&E's breach of contract and fraud are governed by the statute of limitations for indemnity claims rather than the statutes of limitations for breach of contract and fraud.

KG&E is a utility company that provides electricity to customers in most of south central and southeast Kansas. KGS is an intrastate natural gas pipeline company that buys natural gas under contracts with producers. In turn, KGS sells that gas to its customers. Historically, KG&E has been the largest customer of KGS and the purchase and sale of natural gas between the two have been governed by various contracts. KGS has gas pipelines originating in western Kansas that terminate at two KG&E gas-fired power plants in Wichita, the Murray Gill and Gordon Evans Electric Generating Stations. Until the early 1970's, KG&E generated almost all its electricity by burning natural gas. In 1973, however, KG&E's first coal plant, the La Cygne #1, was placed into service and, in 1985, Wolf Creek nuclear power plant became operational. KG&E continued to use natural gas after the La Cygne #1 and Wolf Creek plants began operating, but its actual gas needs and the amount of gas it purchased from KGS diminished substantially.

The pertinent contracts governing the purchase and sale of natural gas between KG&E and KGS included:

1960—Glick Contract.

This contract specifically provided that KG&E was required to take gas from the Glick-Mississippi Gas Pool (Glick Field) as needed for its Gordon Evans and Murray Gill plants. KGS's excess gas, not needed by KG&E, could be sold to others only when it became necessary for KGS to avoid minimum-take liability to the producers. The contract allowed KGS to extract from the gas stream and sell, without regard to KG&E's gas needs, butane, propane, and other valuable liquid hydrocarbons for the benefit of KGS's corporate affiliates.

1962—Calista Contract.

KGS agreed to sell gas to KG&E from sources of supply other than the Glick Field on an interruptable basis. The terms of the Calista Contract are essentially the same as the 1960 Glick Contract.

1972—Contract for Additional Gas (also referred to as the New Gas Contract).

Unlike the Glick and Calista contracts, this contract required KG&E to pay for gas which KGS made available under the contract, even if the gas was not needed or taken by KG&E, to the

extent of KGS's minimum-take liability, if any. This requirement is referred to as a "take or pay" provision and was eliminated in 1981 by order of the Kansas Corporation Commission.

1976—Various contract amendments extended the 1960, 1962, and 1972 contracts through 1990.

KG&E and KGS agreed that KGS would attempt to extend its producer contracts and obtain additional gas reserves exclusively for the benefit of KG&E. The agreement extending the Glick Contract, which maintained the exclusive dedication of gas to KG&E, provided: "Vendor [KGS] will undertake for the benefit of Vendee [KG&E], in performance of this contract, to extend [the contracts with producers in the Glick Field] or enter into new contracts with such producers upon terms and conditions mutually agreeable between Vendor and such producers." The extensions retained KG&E's right of first refusal for all gas under contract to KGS. (These are the contracts on which KGS was later sued by the producers and for which KGS sought indemnification against KG&E on an agency theory.)

1981—Contract amendments to the 1960, 1962, and 1972 contracts abrogated their pricing provisions due to an order of the Kansas Corporation Commission. The Contract for Additional Gas, which was the only contract which had a "take or pay" provision, was amended so that KG&E would be required to pay only for gas it actually utilized/took. From this point forward, all of the contracts between KG&E and KGS specifically provided that KG&E was required to pay only for gas which KG&E actually utilized/took.

1984—Gas Sales Agreement.

This contract provided in pertinent part that: (1) it replaced the three prior contracts "in toto"; (2) it was the entire agreement between the parties; and (3) KG&E was required to pay only for gas actually taken from KGS (i.e., no payments were required for excess gas which KGS might have and which KG&E did not need to take).

In September 1976, KG&E requested KGS to submit its forecast of gas availability for the following 10 years. In turn, KGS asked KG&E for its 10-year forecast of gas requirements so KGS could formulate a gas acquisition program. KG&E provided KGS with a 10-year forecast showing gas requirements substantially in

excess of KGS's forecasted supply throughout the 10-year period. From 1976 to 1983, KG&E annually prepared 10-year forecasts of its gas needs. After 1982, KG&E did not provide KGS with additional forecasts nor advise KGS of an expected decrease in its future gas requirements. KGS, however, annually provided KG&E with its 10-year forecasts of gas availability, which showed KGS was acquiring large reserves of gas pursuant to the 1976 amendments.

In 1977 and 1978, KGS obtained extensions of its gas purchase contracts with Barbara and Pickrell and other Glick field producers to 1990, to coincide with the extended term of the Glick contract between KGS and KG&E.

In June 1980, KG&E was aware that the availability of gas had increased and its future gas requirements would decline to a point where its suppliers were forecasting they had acquired gas reserves significantly in excess of KG&E's requirements for 1983-1988. KG&E officials were aware that:

(1) KGS was continuing to acquire gas aggressively;

(2) costs of acquisition were rising;

(3) KGS was expecting to sell essentially all the gas in its pipeline to KG&E;

(4) KG&E's forecasts, showing available gas already significantly in excess of KG&E's requirements for the years 1983-1988, had never been disclosed to KGS; and

(5) KG&E could stop KGS from continuing to purchase gas it would be unable to sell to KG&E.

I. Did the trial court err in submitting the agency question to the jury?

As to the issue of agency, the trial judge in instruction Nos. 3, 8, and 9, instructed the jury as follows:

"It is the law of this state that to prove agency it is necessary for the party claiming the existence of an agency agreement to prove it by evidence that is clear and satisfactory.

"To be clear and satisfactory, evidence should be 'clear' in the sense that it is certain, plain to the understanding, unambiguous, and 'satisfactory' in the sense that it is so believable that people of ordinary intelligence, discretion and caution may have confidence in it."

"KGS claims that it acted as an agent for its principal, KG&E, when KGS entered into amendments extending the contracts with Barbara Oil Company

and Pickrell Drilling Company ('Barbara and Pickrell') to purchase gas from Barbara and Pickrell, and that KG&E, as principal, must indemnify KGS for the amounts it paid in settlement of Barbara and Pickrell's claims against KGS. To obtain reimbursement from KG&E, KGS must show:

1. KGS acted as an agent for KG&E when it entered into amendments extending the contracts with Barbara and Pickrell to purchase gas from Barbara and Pickrell; and

2. KGS made a reasonable settlement of the claims by Barbara and Pickrell.

"An agent is a person who, by agreement with another called the principal, performs or is to perform services for the principal with or without compensation. The agreement may be written, oral or implied by the behavior of the parties.

"Unless otherwise agreed, it is inferred that a principal contracts to use care to inform the agent of risks of pecuniary loss which, as the principal has reason to know, exist in the performance of authorized acts and which he has reason to know are unknown to the agent. His duty to give other information depends upon the agreement between them.

"A principal's duty to indemnify its agent arises from the existence of an agency relationship and does not require a separate express agreement.

"KGS's settlement with Barbara and Pickrell is reasonable if the amount paid is reasonable and KGS would have been liable to Barbara and Pickrell."

"You may find that an agreement between KG&E and KGS included a term that made KGS KG&E's agent with respect to activities giving rise to KGS's liability to Barbara and Pickrell only if you find that KGS has proved by clear and satisfactory evidence that KGS and KG&E expressly or impliedly agreed that KGS would act primarily for KG&E's benefit and not for itself with respect to those or related activities: that is, in order words, that they agreed that KGS would be KG&E's fiduciary, and would put KG&E's interests ahead of its own."

As to KG&E's defense relative to KGS's agency indemnification claim, in instruction Nos. 10 and 11, the trial judge instructed:

"A defense that KG&E asserts against KGS's claims of agency indemnification is the defense of waiver. If you find that KG&E has proved this defense, KGS will not be entitled to recover on this claim. In order for KG&E to prove this defense, it must prove that after KGS discovered its potential liability to Barbara or Pickrell, KG&E and KGS made a new contract in which KG&E made some substantial concession, or which was more favorable to KGS than the previous contract between the parties."

"A second defense that KG&E asserts against KGS's agency indemnification claim is the defense of accord and satisfaction, also referred to as substituted contract. If you find that KG&E has proved this defense, KGS will not be entitled to recover on these claims. In order for KG&E to prove this defense, it must prove that after KGS actually discovered its potential liability to Barbara and Pickrell, KG&E and KGS made a new contract by

which the parties knowingly agreed that KGS's indemnification claim would be relinquished."

The jury verdict form submitted to the jury stated in relevant part:

"5. Has KGS proved by clear and satisfactory evidence that it acted as the agent of KG&E when it extended the Barbara and Pickrell gas purchase agreements (Instruction No. 8 & 9)? If you answer 'yes' to this question proceed to Question 6. If you answer 'no' you should not answer the remaining questions.

　　　YES  _X_  NO ____　Agreement is by 12 jurors.
　　　　　　　　　　　　　　(must be by 10 or more)

"6. Has KG&E proved by a preponderance of the evidence either of its claimed defenses of waiver (Instruction No. 10) or substituted contract (Instruction No. 11) to KGS's agency claim? If you answer 'yes' to this question, you should not answer the remaining questions. If you answer 'no,' proceed to question 7.

　　　YES ____  NO _X_　Agreement is by 12 jurors
　　　　　　　　　　　　　　(must be by 10 or more)"

Neither party objected to the giving of a substituted contract instruction or the jury verdict form. It is important to note that the jury was not asked if KGS was acting as KG&E's agent by a written or oral agreement or implied by the behavior of the parties.

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Patterson v. Brouhard*, 246 Kan. 700, 702-03, 792 P.2d 983 (1990).

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 306, 756 P.2d 977 (1988).

"In ruling on a motion for a directed verdict, the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought and where reasonable minds could reach different conclusions based on the evidence the motion must be denied and the matter submitted to the jury. This rule is also applicable when appellate review is sought on a motion for directed verdict." *Holley v. Allen Drilling Co.*, 241 Kan. 707, 710, 740 P.2d 1077 (1987).

An agency has been defined as a contract, either express or implied, by which one of the parties confides to the other the management of some business to be transacted in the party's name, or on the party's account, and by which that other assumes to do the business and to render an account of it. Determination of what constitutes agency and whether there is any competent evidence reasonably tending to prove the existence of agency is a question of law. An express agency exists if the principal has delegated authority to the agent by words which expressly authorize the agent to do a delegable act. An implied agency may exist if it appears from the statements and conduct of the parties and other relevant circumstances that the intention was to clothe the agent with such an appearance of authority that when the agency was exercised it would normally and naturally lead others to rely on the person's acts as being authorized by the principal. *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 238 Kan. 384, Syl. ¶¶ 4, 5, 6, 7, 710 P.2d 1297 (1985).

KG&E contends the question of whether an agency existed is a question of law and not a question of fact and only when there is conflicting evidence can the issue be submitted to a jury. KG&E asserts that, because the relationship between the two parties in this case is defined by a written contract, the contract determines the agency issue. It argues the willingness of courts to find the existence of an agency depends on whether the question is raised by one of the parties to a contract or by a third party. Where there is no third party, KG&E claims, it is inappropriate for the courts to find an agency relationship unless it is created by contract. KG&E asserts that, since the contracts determine the issue, there was no question of fact and the district judge should have granted its motions for summary judgment and directed verdict on the agency issue.

What constitutes agency and whether there is competent evidence reasonably tending to prove the relationship is a question of law. Although what constitutes agency is a question of law, resolution of conflicting evidence which might establish its existence is for the finder of fact. *Aetna Casualty and Surety Co. v. Hepler State Bank*, 6 Kan. App. 2d 543, 548, 630 P.2d 543 (1981). The weight to be given evidence and resolution of conflicts

therein are functions of the trier of facts in the determination of whether there is a relationship of principal and agent. Where the existence of agency is disputed, its existence or nonexistence is ordinarily a question of fact for the jury, to be determined upon proper instructions. *CIT Financial Services, Inc. v. Gott*, 5 Kan. App. 2d 224, 229-30, 615 P.2d 774, *rev. denied* 228 Kan. 806 (1980). "The province of an appellate court is to determine if the record reveals evidence on which a finding of agency could be based, not to decide whether, under proper instructions relating to the law of principal and agent, it existed as a matter of fact." *Traylor v. Wachter*, 3 Kan. App. 2d 536, Syl. ¶ 2, 598 P.2d 1061 (1979), *aff'd in part, rev'd in part* 227 Kan. 221, 607 P.2d 1094 (1980).

KG&E contends the trial court erred in not granting KG&E summary judgment or directed verdict because there is no evidence of an agency agreement between KG&E and KGS. Specifically, KG&E argues (1) agency relationships are fiduciary relationships which must be proved by clear and convincing evidence, which was lacking in this case; (2) KGS and KG&E did not expressly contract for KGS to be KG&E's agent; (3) there is no evidence that KG&E implied KGS was to be its agent; (4) the agency issue before this court presents a question of law; and (5) since the relationship between KGS and KG&E is defined by a written contract, that contract determines the agency issue in lawsuits between them.

KG&E observes the existence of an "agency" contract, express or implied, is not easily established, *i.e.*, it must be proved by *clear and convincing evidence*. Because of this heightened burden of proof, it argues, KGS was required to adduce much more evidence to support the existence of the agency contract than in the case of an ordinary contract, which can be proved by a mere preponderance of the evidence. To defeat its motions for summary judgment and directed verdict, it argues, KGS was required to produce evidence of sufficient quantity and caliber to permit a factfinder to conclude that KGS had proven, by clear and convincing evidence, that KGS and KG&E had expressly or impliedly agreed that KGS would be KG&E's agent. KG&E asserts KGS failed to meet its burden.

First, we disagree with KG&E's definition of clear and convincing evidence. Clear and convincing evidence is not a quantum of proof, but rather a quality of proof; thus, the plaintiff establishes agency by a preponderance of the evidence, but this evidence must be clear and convincing in nature. On review, this court considers only the evidence of the successful party to determine whether it is substantial and whether it is of a clear and convincing quality. See *Newell v. Krause*, 239 Kan. 550, 557, 722 P.2d 530 (1986).

Secondly, without objection, the trial judge instructed the jury that the standard of proof required to show the existence of an agency relationship is clear and satisfactory evidence. To be clear and satisfactory, evidence should be "clear" in the sense that it is certain, plain to the understanding, and unambiguous, and "satisfactory" in the sense that it is so believable that people of ordinary intelligence, discretion, and caution may have confidence in it. Clear and satisfactory evidence is not a quantum of proof, but rather a quality of proof. See *Highland Lumber Co., Inc. v. Knudson*, 219 Kan. 366, Syl. ¶ 1, 548 P.2d 719 (1976), which states: "Where the relationship of principal and agent is in issue, the party relying thereon to establish his claim or demand has the burden of establishing its existence by clear and satisfactory evidence."

To determine whether the record establishes an agency by agreement, the record must be examined to ascertain if the party sought to be charged as principal has delegated authority to the alleged agent by words which expressly authorize the agent to do the delegated act. If there is evidence of that character, the authority of the agent is express. If no express authorization is found, the evidence must be considered to determine whether the alleged agent possesses implied powers. The test utilized by this court to determine if the alleged agent possesses implied powers is whether, from the facts and circumstances of the particular case, it appears there was an implied intention to create an agency, in which event the relationship may be held to exist, notwithstanding either a denial by the alleged principal or whether the parties understood it to be an agency. *Highland Lumber Co., Inc. v. Knudson*, 219 Kan. at 370.

An agency is implied if, from statements of the parties, their conduct, and other relevant circumstances, it appears the intent of the parties was to create a relationship permitting the assumption of authority by an agent which, when exercised, would normally and naturally lead others to believe in and rely on the acts as those of the principal. While the relationship may be inferred from a single transaction, it is more readily inferable from a series of transactions. An agency will not be inferred because a third person assumed that it existed, nor because the alleged agent assumed to act as such, nor because the conditions and circumstances were such as to make such an agency seem natural and probable. *Highland Lumber Co., Inc. v. Knudson,* 219 Kan. at 371.

KG&E contends there was no evidence of an express agency relationship. It notes although the 1976 amendment to the Glick Contract stated that *"Vendor will undertake for the benefit of Vendee [KG&E], in performance of this contract, to extend such contracts or enter into new contracts with such producers,"* there is no language which suggests or indicates a principal-agent relationship between KG&E and KGS in the other contracts. Further, it argues the various contracts over the years contain many provisions that are inconsistent with the existence of an agency relationship. Examples noted by KG&E include: (a) consistent use of language describing KGS as Vendor and KG&E as Vendee in the various contracts; (b) contract provisions providing KGS was to take title to the gas it purchased from the producers while KG&E would not receive title until KGS delivered the gas to KG&E; (c) the provision in the Glick Contract that gave KG&E a right of first refusal to buy Glick gas from KGS after the contract expired; (d) the absence of contract language that would allow KG&E a role in setting the price KGS would pay the gas producers; and (e) the Glick Contract's explicit rejection of any KG&E obligation to take and pay for more gas than it needed at the two gas-fired plants, prohibition of KG&E from reselling the gas or using it for any other purpose, and exclusion from the contract of any gas exceeding KG&E's need that KGS had to take to avoid minimum-take liability to the producers.

In addition, KG&E contends there is no evidence that the parties *orally* agreed that KGS would be KG&E's agent.

KGS contends the several contract provisions were sufficient evidence of an express agency relationship to create a jury question. It observes the 1976 amendment to the Glick Contract provided that KGS was to extend its contracts with the gas producers "for the benefit of " KG&E. KGS notes in numerous cases an agent is defined as one who acts primarily "for the benefit of " another party. Further, it claims the words "for the benefit of " are used by the Restatement of Agency (1933) and courts to define agency and the parties in this case used that phrase only when contracting as to gas to be dedicated to KG&E. It asserts exclusive dealing between the parties is evidence of the existence of an agency relationship and that under the Glick Contract and Contract for Additional Gas, all gas acquired by KGS was exclusively dedicated to KG&E. KGS contends it was required to obtain approval by KG&E of all gas purchases involving a capital expenditure over $100,000, which ensured that KG&E controlled and had veto power over any substantial gas acquisition expenditure by KGS. KGS also mentions use of cost-plus pricing and KG&E's agreement to finance capital expenditures necessary for KGS to attach new supplies of gas. KGS notes that, upon the expiration of KGS's contracts with KG&E, KG&E retained the right of first refusal for gas that KGS had purchased for KG&E's benefit and that the Contract for Additional Gas obligated KGS to use its best efforts to purchase economically additional gas dedicated to KG&E.

KG&E contends there was no evidence of an implied agency relationship because the facts adduced in support of the alleged agency are also consistent with a different relationship, e.g., the relationship of buyer and seller, so a reasonable factfinder would not find an agency was implied under those facts. It further claims the facts are not consistent with an implied agency. KG&E cites implications of fixed pricing v. cost-plus pricing and further states the interplay between KGS and KG&E regarding KGS's dealings with the producers could reflect either the principal's right to control the activities of an agent or "the natural solicitude that any buyer [KGS] gives a seller [KG&E] who is an important customer." KG&E argues the limited control it exercised over KGS did not impliedly create an agency relationship. Although KG&E, as KGS's largest customer, did have economic clout over

KGS, KG&E argues economic clout alone does not make KG&E a principal and KGS an agent.

KGS responds that KG&E's evidence did not eliminate the fact question for the jury. It claims the "Vendor"/"Vendee" labels do not determine the nature of the relationship; rather, it is the substance of the transaction which is decisive.

KGS argues the conduct of the parties during the course of their relationship is the primary evidence that an agency relationship existed. It asserts KG&E controlled KGS's gas acquisition efforts; KGS's gas acquisition personnel were in contact with KG&E officials several times each week and discussed individual transactions in detail; KG&E financed advance payments to producers as an incentive for them to develop gas supplies to be purchased by KGS for exclusive dedication to KG&E; each month KGS provided KG&E detailed information regarding gas purchases and sales and new gas acquisitions; before implementing a new form contract, KGS discussed in detail the terms of the form with KG&E; KG&E specifically approved the terms of the contract extensions entered into with Barbara and Pickrell; virtually all the gas purchased by KGS was delivered to KG&E, and the exclusive dedication provisions of the contracts between KGS and KG&E precluded any substantial change in KG&E dominance. Moreover, KGS argues, the physical configuration of the system, with KGS's lines terminating at KG&E's plants, made KGS highly dependent on KG&E. Further, the length of the relationship between KGS and KG&E supports a finding that this was not an ordinary buyer-seller relationship but an agency relationship and KG&E officials indicated that they regarded the gas under contract to KGS as KG&E's gas.

Although the evidence pointed out by the parties, by itself, is not conclusive that KGS was acting as an agent of KG&E in extending the producer contracts, reasonable minds could differ on the conclusions that could be drawn from this evidence in conjunction with other evidence. Under the standards of review for summary judgment and directed verdict, the trial court was required to submit the expressed or implied agency question to the jury.

II. Does the parol evidence rule prohibit consideration of any agency agreement that might have been made prior to the 1984 replacement contract?

KG&E next claims gas contracts are contracts for the sale of goods and thus are governed by Article 2 of the Uniform Commercial Code (U.C.C.), and Chapter 84 of the Kansas Statutes Annotated, citing *Sunflower Electric Coop., Inc. v. Tomlinson Oil Co.,* 7 Kan. App. 2d 131, 139, 638 P.2d 963 (1981), *rev. denied* 231 Kan. 802 (1982). KG&E then claims that the applicable parol evidence rule to consider is found at K.S.A. 84-2-202, which provides:

"Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(a) by course of dealing or usage of trade (section 84-1-205) or by course of performance (section 84-2-208); and

(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

It is a general rule that parol evidence may not be introduced to contradict, alter, or vary the terms of a written instrument, but where the contract is silent or ambiguous concerning a vital point incident thereto, parol evidence will be received to aid in its construction. *Souder v. Tri-County Refrigeration Co.,* 190 Kan. 207, 373 P.2d 155 (1962); *Stapleton v. Hartman,* 174 Kan. 468, 257 P.2d 113 (1953).

K.S.A. 84-2-202 does not abolish the general parol evidence rule. It specifically provides that where the confirmatory memoranda of the parties agree as to any of the terms, or where the writing is intended as a final expression of the agreement of the parties with respect to any of the terms included therein, one may not contradict such terms by evidence of any prior agreement or contemporaneous oral agreement. However, the U.C.C. does permit such terms to be explained or supplemented.

The explanation or supplementation may be through proof of a course of dealing, usage of trade, or a course of performance

and by evidence of consistent additional terms, unless the court finds an intent that the writing was to be both a complete and an exclusive statement of the terms.

It is frequently a matter of judgment as to whether or not a writing is ambiguous or silent on a controversial matter. If either condition is present, parol evidence of custom, usage, etc., would be admissible in construing the terms of the contract. However, this U.C.C. section goes one step further and allows such evidence to be introduced to explain or supplement the terms even though the writings are neither ambiguous nor silent. 7 Vernon's Uniform Commercial Code § 84-2-202, Kansas Code Comment (1968).

K.S.A. 84-2-202, Kansas Comment 1983, states:

"This section modifies and liberalizes the application of the parol evidence rule to writings evidencing a contract of sale. Under this section, it is now easier for oral evidence to be admissible. The most important change is the reversal of the presumption in pre-Code cases that a writing was integrated and contained the entire contract. See *Hudson v. Riley*, 104 K. 534, 180 P. 198 (1919). This view is rejected, and under paragraph (b) it is now presumed that the writing is not integrated.

"In its operation, this section accords with the general understanding of the parol evidence rule in providing that terms set forth in a writing intended by the parties as a final expression of their agreement may not be contradicted by evidence of any prior agreement or any contemporaneous oral agreement. As noted, however, this rule applies only to the extent the terms have been finalized in a writing, and creates no presumption that all matters agreed upon have been included in the writing."

KG&E contends the parol evidence rule bars consideration of KGS's *implied* agency claim. We disagree. The jury could have found KGS was an implied agent of KG&E when KGS extended its contracts with the producers; if so, the parol evidence rule of the U.C.C. would not apply. It would not be inconsistent for the jury to find KGS and KG&E were agent and principal insofar as an extension of the KGS/producer contracts and that they were seller and buyer as to the transfer of natural gas to KG&E by KGS. Under the facts of this case, the trial judge was correct in ruling the parol evidence rule did not prohibit consideration of any agency agreement that might have been made prior to the 1984 replacement contract.

III. Did the 1984 contract between KGS and KG&E discharge or replace any agency agreement that might have been part of those previous contracts?

KG&E next contends that if an agency relationship was created by the earlier contracts, the 1984 contract between KG&E and KGS discharged or replaced that relationship. KG&E asserts the 1984 Gas Sales Agreement expressly terminated the previous contracts in toto and governed all gas deliveries when it became effective. KG&E points out the 1984 contract contains an anti-minimum take provision and an integration clause, and it lacks the "for the benefit of " language.

KG&E claims the doctrine of substituted contract described in the Restatement (Second) of Contracts § 279 (1979) has been referred to as novation in recent Kansas cases and as abandoned contract or substituted agreement in older cases. Invocation of the defense requires a showing of the following elements: (1) a previous valid contract; (2) agreement on a new contract; (3) validity of that new contract; and (4) intent to extinguish the old contract and substitute the new. *Elliott v. Whitney*, 215 Kan. 256, Syl. ¶ 1, 524 P.2d 699 (1974). Where a written contract is involved, the existence of substitution is a question of law for the court. *W-V Enterprises, Inc. v. Federal Savings & Loan Insurance Corp.*, 234 Kan. 354, 362, 673 P.2d 1112 (1983). KG&E further asserts that a myriad of cases hold that where a contract acknowledges that it is a replacement for a previous contract, but does not expressly state whether claims under the prior contract are waived, that the prior claims are presumed to have perished.

KGS responds that KG&E did not move for summary judgment or directed verdict on grounds the 1984 contract discharged any prior agency contract, so it may not now appeal on that basis. It points out that KG&E argued for submission of the issue to the jury as a question of fact; therefore, KG&E is precluded from raising the issue on appeal. It argues that, at KG&E's request, the jury decided the 1984 contract preserved KGS's indemnity claim against KG&E. Further, KGS claims the 1984 contract replaced the parties' prior agreements only with respect to deliveries of gas after September 15, 1984. It had nothing to do with past deliveries of gas or obligations created by KGS's actions

as KG&E's agent prior to 1984. KGS argues it did not waive any prior claim it had against KG&E, pointing out that the 1984 contract provided:

"Nothing in this agreement shall be construed to alter or enlarge in any respect any other contracts or agreements by and between the parties to this Agreement for any gas delivered by Vendor to Vendee before the effective date of this Agreement under other contracts or agreements including the Predecessor Contracts."

The construction of a written instrument is a question of law, and the instrument may be construed and its legal effect determined by the court on appeal. *Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.*, 243 Kan. 130, 133, 754 P.2d 803 (1988). However, when a party erroneously requests that the determination of the issue be submitted to the jury at trial, that party cannot raise the issue on appeal and request this court to reconstrue the issue it requested be submitted to the jury. Where a party persuades a court to proceed in a particular way and invites a particular ruling, the party is precluded from asserting the issue on appeal. *W-V Enterprises, Inc. v. Federal Savings & Loan Ins. Corp.*, 234 Kan. at 362. The jury's determinination that there was no novation will stand.

IV. Was KGS's agency claim barred by the four-year period of limitations established by the U.C.C. for breach of a sales contract?

KG&E next contends KGS's agency indemnification claim is barred by the U.C.C. statute of limitations for breach of a sales contract, K.S.A. 84-2-725. That statute provides in relevant part:

"(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . .

"(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."

KG&E asks this court to adopt the holding of *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214 (Utah 1984), a minority rule, which held that in U.C.C. cases indemnification claims accrue at the same time that the underlying claim against the party seeking indemnification accrues. Under this approach, KGS's agency claims against KG&E would have accrued contemporaneously with Barbara and Pickrell's claims against KGS, in 1983, and

would be barred under K.S.A. 84-2-725 because they were not brought within four years. KG&E suggests that because KGS was aware in 1984 that Barbara and Pickrell were asserting that KGS had breached the minimum "take or pay" provisions of its contracts with the gas producers and did not inform KG&E of this fact until more than five years later, it would be appropriate to follow *Perry* and its progeny and bar KGS's claim. Most courts have rejected the *Perry* case and hold that a claim for indemnity accrues at the time the indemnity claimant suffers its loss, even if the indemnity claim is based on breach of contract for the sale of goods.

KGS observes that under Kansas law the statute of limitations for an indemnity claim does not commence to run until the third-party plaintiff becomes obligated, by judgment or settlement, to pay the original plaintiff. It asserts that because KGS did not settle and pay the Barbara and Pickrell claims until January 3, 1991, the statute of limitations on KGS's third-party agency indemnity claim against KG&E had not expired before KGS filed its claim in 1989.

KGS argues the U.C.C. statute of limitations is not applicable because this is an action for indemnity, not a breach of sales contract claim. KGS's claim for indemnity does not relate to a breach of contract for the sale of goods but arises from KG&E's obligation as principal to indemnify its agent because of an implied obligation. By virtue of the agency agreement, KGS did not sell anything to KG&E; rather, it acted as KG&E's agent when it extended its contracts with the producers.

KGS's judgment is not indemnification for breach of a sales contract. The judgment is based on KGS's claim that it extended its contracts with the producers as an agent for KG&E. KGS was liable to Barbara and Pickrell for not taking as much gas as the extended contracts required. KGS was entitled to indemnification from KG&E because it extended the contracts with the producers as an agent of KG&E. KGS's indemnification claim as KG&E's agent is not a breach of sales contract claim and the U.C.C. statute of limitations does not apply.

We agree with the district court's finding that KGS's claim for

indemnification for loss it suffered as KG&E's agent was not barred by the statute of limitations.

Affirmed.