No. 111,191

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CURO ENTERPRISES, LLC,
*Appellant*,

v.

DUNES RESIDENTIAL SERVICES, INC.,
*Appellee.*

SYLLABUS BY THE COURT

1.

The legal effect of a written instrument is a question of law. The written instrument may be construed and its legal effect determined by the appellate court regardless of the construction made by the district court.

2.

What constitutes a principal/agent relationship and whether there is competent evidence reasonably tending to prove such relationship is also a question of law. An express agency exists if the principal has delegated authority to the agent by words which expressly authorize the agent to do a delegable act. An implied agency may exist if it appears from the statements and conduct of the parties and other relevant circumstances that the intention was to clothe the agent with such an appearance of authority that when the agency was exercised it would normally and naturally lead others to rely on the person's acts as being authorized by the principal.

3.

An action must be prosecuted in the name of the real party in interest, but a suit does not have to be dismissed if the real party in interest is not joined. The purpose of the

real party in interest rule is to protect a defendant from being repeatedly harassed by a multiplicity of suits for the same cause of action so that if a judgment be obtained it is a full, final, and conclusive adjudication of the rights in controversy that may be pleaded in bar to any further suit instituted by any other party. If the defendant is aware of the real party in interest, then the suit may proceed.

4.

In Kansas, a court may not award attorney fees absent statutory authority or an agreement by the parties. Whether a court has the authority to award attorney fees is a question of law over which appellate review is unlimited.

5.

When a contract provides that *either party* who brings a claim under the contract is entitled to its attorney fees when it is the prevailing party, and when that same contract gives specific authority to a nonsignatory third party to enforce the agreement on behalf of a signatory, then such nonsignatory third party can collect its attorney fees if it is the prevailing party.

6.

A prevailing party is the party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his or her original contention. The prevailing party is one in whose favor the decision or verdict is rendered and judgment entered. With respect to the specific question of attorney fees, it has been stated a prevailing party is the person who has an affirmative judgment rendered in his or her favor at the conclusion of the entire case.

7.

When interpreting contractual prevailing party language, a court should employ a flexible and reasoned approach that allows room for common sense to guide a court's decision. This is particularly true in the context of a settlement.

8.

A consent decree is essentially a settlement agreement subject to continued judicial policing, supervision, and enforcement.

Appeal from Johnson District Court; THOMAS M. SUTHERLAND, judge. Opinion filed January 2, 2015. Reversed and remanded with directions.

*J. Eugene Balloun* and *Zach Chaffee-McClure*, of Shook, Hardy & Bacon L.L.P., of Kansas City, Missouri, for appellant.

*Robert W. Tormohlen*, *Scott A. Wissel*, and *Daniel R. Luppino*, of Lewis, Rice & Fingersh, L.C., of Kansas City, Missouri, for appellee.

Before POWELL, P.J., LEBEN, J., and HEBERT, S.J.

POWELL, J.: This dispute involves the efforts of the asset manager for the owner of an apartment complex to terminate the services of the property manager for that apartment complex. Curo Enterprises, LLC (Curo), the asset manager, brought an action in Johnson County District Court to remove Dunes Residential Services, Inc. (Dunes) as the property manager. The parties ultimately settled the case, but Curo appeals from the district court's order denying its request for attorney fees pursuant to a fee-shifting provision in the management agreement between the owner of the apartment complex and Dunes. Curo argues the district court erred by finding Curo was not the owner's agent under the terms of the management agreement and was neither a "party" nor a "prevailing party" under the fee-shifting provision. Curo argues it filed suit as the owner's agent and,

3

when the district court approved and incorporated the parties' settlement agreement into an order, the district court qualified Curo as a prevailing party entitled to attorney fees.

Because we agree Curo was acting as the owner's agent when it sought to terminate Dunes as the apartment complex property manager under the terms of the management agreement and because we find Curo qualified as both a party and a prevailing party under the fee-shifting provisions of the management agreement, we reverse the district court and remand to determine attorney fees and costs to which Curo is entitled under the management agreement as the prevailing party.

FACTS

The Lenexa, Kansas, apartment complex at issue is owned by Dunes Point West Associates, L.L.C. (DPW). Originally, three entities—one of which owns 10% and is the managing member—invested to create DPW. Later, a group of investors acquired the remaining 90% interest and serve as nonmanaging members. A separate entity, NDC Capital Partners (NDC), was appointed the asset manager to oversee the financial aspects of the apartment complex for the benefit of the nonmanaging members.

In 2006, DPW entered into a management agreement with Dunes to manage the apartment complex. Dunes was in charge of day-to-day functions such as leasing, rent collection, and property maintenance. Section 6 of the management agreement provided that either DPW or Dunes could terminate the agreement by giving the other party 30 days advance written notice, with or without cause. Section 14 of the management agreement stated: "This Agreement shall be enforceable by NDC Capital Partners on behalf of [DPW] without any action or consent necessary from the Managing Member of [DPW]." The agreement was signed by the managing member of DPW and by Dunes. Effective June 30, 2012, NDC assigned its interest as the asset manager to Curo Properties, LLC, which, in turn, assigned its interest to Curo.

4

The dispute began on February 22, 2013, when Curo, as asset manager, notified Dunes by letter of its intent to terminate the management agreement between DPW and Dunes. Dunes responded on March 8, 2013, challenging and rejecting Curo's right to terminate the management agreement. Curo filed suit on March 21, 2013, seeking: (1) a declaratory judgment that Dunes was no longer manager of the property; (2) an order compelling Dunes to step down as property manager; and (3) an order awarding Curo attorney fees and costs pursuant to a fee-shifting provision in the management agreement.

The trial was scheduled to begin September 12, 2013, but on September 7, 2013, Dunes submitted a notice of termination of the management agreement. According to the district court, Dunes' notice claimed to terminate the management agreement without admitting liability or making concessions. Based on this notice, on September 26, 2013, the court ordered the following: (1) another property manager could enter into a management agreement to assume the property management functions and obligations; (2) Dunes must turn over all books, records, files, keys, contracts, agreements, tenant records, financial data, and any other tangible property required to facilitate the transition of all property management duties to the new property manager; and (3) the September 12, 2013, trial was moot but both Curo and Dunes reserved the right to seek an award of legal fees and costs.

On November 13, 2013, Curo filed a motion requesting attorney fees and costs as the prevailing party under Section 21 of the management agreement. The district court found Curo was not entitled to attorney fees and costs because it was a third-party beneficiary to the management agreement and not an agent of DPW. It further found that even if Curo was the agent, Curo did not qualify as a prevailing party. On January 28, 2014, the district court issued a final judgment dismissing Counts 1 (declaratory judgment) and 2 (specific performance) of Curo's petition as moot and denying Curo judgment on Count 3 (attorney fees).

Curo timely appeals.

## DID THE DISTRICT COURT ERR BY FINDING CURO WAS NOT DPW'S AGENT?

Section 21 of the management agreement relating to attorney fees provides:

> "In the event that *either party* hereto brings an action or proceeding for a declaration of the rights of the parties under this Agreement or for any alleged breach of or default under this Agreement, or any other action arising out of this Agreement or the transactions contemplated hereby, the *prevailing party* in any such action shall recover from the *non-prevailing party* its attorneys' fees and any court costs incurred in such action or proceeding, in addition to any other damages or relief awarded, regardless of whether such action proceeds to final judgment. The provisions of this Section 21 shall survive any termination of this Agreement." (Emphasis added.)

The district court denied Curo's motion for attorney fees and court costs pursuant to Section 21, finding (1) Curo did not qualify as a "party" to the agreement and (2) even if Curo was entitled to enforce the agreement, it was not the prevailing party. As to the first point, Curo argues it was DPW's agent under the management agreement, making it a party entitled to attorney fees. Conversely, Dunes argues Curo's actions in seeking its removal as property manager were those of a third-party beneficiary, not an agent.

The legal effect of a written instrument is a question of law. It may be construed and its legal effect determined by the appellate court regardless of the construction made by the district court. *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011). What constitutes a principal/agent relationship and whether there is competent evidence reasonably tending to prove such relationship is also a question of law. *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 446, 827 P.2d 24 (1992). However, resolution of conflicting evidence that might establish the existence of a principal/agent

6

relationship is a question for the finder of fact. *Barbara Oil Co.*, 250 Kan. at 446. Inasmuch as the parties have not produced conflicting evidence but, instead, disagree on whether the undisputed language in the management agreement established an agency relationship between Curo and DPW, we are therefore confronted with a question of law in which our review is unlimited. See *Bunge Milling, Inc. v. City of Atchison*, 49 Kan. App. 2d 325, 329, 310 P.3d 1064 (2013); *Town Center Shopping Center v. Premier Mortgage Funding, Inc.*, 37 Kan. App. 2d 1, 6, 148 P.3d 565 (2006), *rev. denied* 283 Kan. 933 (2007).

A.     *Was Curo an agent under the management agreement?*

While it is true the only signatories to the management agreement were DPW and Dunes, Curo claims it qualifies as a party to the agreement because Section 14 of the agreement established Curo, the assignee of NDC (the prior asset manager), as DPW's agent. The district court rejected this argument and ruled Curo occupied the role of a third-party beneficiary rather than an agent. Curo concedes that if it were merely a third-party beneficiary, then it would be unable to enforce the fee-shifting section of the management agreement. See *Intermountain Res., L.L.C. v. Honea*, 68 Fed. Appx. 937, 938 (10th Cir. 2003) (under Colorado law, third-party beneficiaries bound by contracts but not obligated under attorney fee provisions of same contract). But see *TST Truck Insurance, Ltd. v. First National Bank of Wamego*, 2014 WL 1047993, at *8 (D. Kan. 2014) (unpublished opinion) (*Intermountain Res.* does not contain per se rule against third-party beneficiary's recovery of contractual attorney fees).

Instead, Curo argues the district court erred by finding Curo was *merely* a third-party beneficiary rather than a third-party beneficiary *and* DPW's agent. Curo claims the roles of a third-party beneficiary and an agent are not mutually exclusive. Curo explains it was a third-party beneficiary under the management agreement because the management agreement incorporated DPW's operating agreement which conferred upon

7

the asset manager, Curo, third-party beneficiary rights such as the right to receive payment for executing its duties as asset manager. But Curo also claimed it was an agent of DPW because Section 14 of the management agreement authorized it to enforce the management agreement "on behalf of" DPW.

It is well settled that an agency relationship may be expressed or implied.

> "'It is an *express agency* if the principal has delegated authority to the agent by words which expressly authorize the agent to do a delegable act. It is an *implied agency* if it appears from the statements and conduct of the parties and other relevant circumstances that the intention was to clothe the agent with such an appearance of authority that when the agency was exercised it would normally and naturally lead others to rely on the person's acts as being authorized by the principal.'" *Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. ___, ___, 335 P.3d 1178, 1189 (2014) (quoting *Professional Lens Plan*, *Inc. v. Polaris Leasing Corp.*, 238 Kan. 384, 390-91, 710 P.2d 1297 (1985).

Paragraph 14 of the management agreement expressly provides that "[t]his Agreement shall be enforceable by NDC Capital Partners on behalf of the Company without any action or consent necessary from the Managing Member of the Owner." The parties do not dispute that Curo took the place of NDC because NDC's rights were assigned to Curo. See *Bolz v. State Farm Mut. Ins. Co.*, 274 Kan. 420, 428, 52 P.3d 898 (2002) ("[An] assignment passes all assignor's title as interest to assignee and divests assignor of all right of control over subject matter[.]"). Therefore, under the clear language of the management agreement, Curo had the right to enforce the agreement "on behalf of" DPW without requiring any action or consent from the managing member of DPW.

B. *Was Curo acting as an agent when it brought the present suit?*

Interestingly, Dunes does not contest Curo's assertion that it could hold both the role of third-party beneficiary and agent. Rather, Dunes argues Curo mischaracterizes the district court's ruling. Dunes claims the district court found Curo was *acting* in its role as a third-party beneficiary to the management agreement when it sought to terminate Dunes and subsequently filed this case. Therefore, even if Curo were DPW's agent, it was not acting within that role when it sought to terminate Dunes. Specifically, Dunes points out that Curo brought this case in its own name rather than in DPW's name.

Under K.S.A. 2013 Supp. 60-217(a)(1), "[a]n action must be prosecuted in the name of the real party in interest." Curo counters that K.S.A. 2013 Supp. 60-217(a)(1)(H) modified the common-law rule that an agent who signed a contract on behalf of the principal was not a party to the contract and could not sue for breach of the contract under its own name. K.S.A. 2013 Supp. 60-217(a)(1)(H) allows "a party with whom or in whose name a contract has been made for another's benefit" to bring an action in its own name. Curo claims the statute allows an agent who is a party to a contract to sue on behalf of the principal in the agent's name alone even though the agent is not technically a party to the contract. See *Wolf Creek Nuclear Operating Corp. v. Framatome ANP, Inc.*, 416 F. Supp. 2d 1081, 1087 (D. Kan. 2006).

Unfortunately for Curo, the situation addressed by K.S.A. 2013 Supp. 60-217(a)(1)(H) is not the same as in this case. Curo did not enter into or sign the management agreement on behalf of DPW and then file suit against Dunes. Dunes entered into the agreement directly with DPW, but the terms of the agreement authorized the asset manager, now Curo, to enforce the agreement on behalf of DPW. Dunes argues that because Curo brought the suit in its own name, it was suing as a third-party beneficiary and declaring that it was the real party in interest under K.S.A. 2013 Supp. 60-217(a), rather than acting as an agent on behalf of DPW. While this might be a factor

9

in determining whether Curo was DPW's agent, it does not definitively show Curo was not DPW's agent.

Moreover, K.S.A. 2013 Supp. 60-217(a) does not mandate that a suit be dismissed if the real party in interest is not joined. The purpose of the real party in interest rule is to protect a

> "'defendant from being repeatedly harassed by a multiplicity of suits for the same cause of action so that if a judgment be obtained it is a full, final and conclusive adjudication of the rights in controversy that may be pleaded in bar to any further suit instituted by any other party.'" *Larson Operating Co. v. Petroleum*, *Inc.*, 32 Kan. App. 2d 460, 465, 84 P.3d 626 (2004) (quoting *Torkelson v. Bank of Horton*, 208 Kan. 267, 270, 491 P.2d 954 [1971]).

In this case, Curo did not hide that it was suing to enforce the management agreement on behalf of DPW. The language in Section 14 was very straightforward and unambiguous. DPW expressly authorized Curo to do a delegable act—enforce the management agreement—on its behalf. Dunes was aware of this delegation of rights. Section 15 of the management agreement even required that all notices, demands, statements, and communications required under the agreement intended for DPW be mailed to DPW and a copy sent to NDC and later Curo. Everything Dunes sent to DPW was also sent to Curo. If Curo was an agent, then DPW was not an undisclosed principal. Dunes could not have thought Curo was suing to enforce its own rights under the agreement since it had none apart from acting on behalf of DPW.

We conclude Curo acted as DPW's agent when it sued to enforce DPW's right to terminate the management agreement.

10

Having decided that Curo was DPW's agent, we must now decide whether acting as DPW's agent allowed Curo to collect attorney fees under Section 21 of the management agreement. In Kansas, a court may not award attorney fees absent statutory authority or an agreement by the parties. See *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013). Whether a court has the authority to award attorney fees is a question of law over which appellate review is unlimited. *Snider*, 297 Kan. at 162.

A.   *Was Curo a party under Section 21 of the management agreement?*

Dunes argues that the attorney fees provision of the management agreement is expressly limited to the two parties to the management agreement: Dunes and DPW, who were the only signatories. See *Civix Sunrise*, *GC*, *LLC. v. Sunrise Road Maintenance Assoc.*, *Inc.*, 997 So. 2d 433, 435 (Fla. App. 2008) ("any party" to agreement doesn't include third-party beneficiary, only signatories); *Parker v. Center for Creative Leadership*, 15 P.3d 297, 299 (Colo. App. 2000) ("any party" to agreement doesn't include third-party beneficiary). As we have previously noted, Section 21 of the management agreement provided that if *either party* to the agreement brought an action arising out of the agreement, then the *prevailing party* could recover attorney fees and costs from the *non-prevailing party*.

A California appellate court has addressed the meaning of contractual language allowing a prevailing party to recover attorney fees from "*either party*." In *Real Property Services Corp. v. City of Pasadena*, 25 Cal. App. 4th 375, 30 Cal. Rptr. 2d 536 (1994), the City of Pasadena entered into a lease agreement with BWC Development Corporation for the development and construction of a site for use as a multiscreen movie theater and parking garage. At the time the lease was signed, it was agreed that RPS would actually

11

operate the movie theater, and the lease provisions specifically stated that the City consented to BWC's subleasing the property to RPS. RPS was not a signatory to the lease. A dispute arose, and RPS, a nonsignatory, sued the City, a signatory, under the lease agreement. RPS lost, however, and the City sought attorney fees under the lease agreement which provided that in the event "either party" brought an action under the agreement, the prevailing party would be entitled to its attorney fees. 25 Cal. App. 4th at 377-78.

California has a reciprocity rule which forbids unilateral attorney fee provisions in contracts. West's Ann. Cal. Civ. Code § 1717 (2009). Under this rule, "[w]here a nonsignatory plaintiff sues a signatory defendant in an action on a contract and the signatory defendant prevails, the signatory defendant is entitled to attorney fees only if the nonsignatory plaintiff would have been entitled to its fees if the plaintiff had prevailed." 25 Cal. App. 4th at 382. The court held that since the lease agreement provided for the award of attorney fees in an action to enforce the agreement brought by "either party," and since the lease expressly provided for RPS to be the sublessee, RPS, as a third-party beneficiary, had the right to sue under the lease agreement and would have been entitled to attorney fees had it prevailed. Therefore, the City was entitled to its attorney fees for prevailing against RPS. See 25 Cal. App. 4th at 383-84.

While we disagree with the notion that a third-party beneficiary is included in the meaning of the words "either party," we do agree with the California Court of Appeals that the meaning of the words "either party" is not limited to only the signatories to a contract in every context. It is the language of the contract itself which controls, and where an entity is expressly referred to in the contact, that evinces some intent to allow that entity to claim attorney fees. It is even more so where, as here, the contract gives specific authority to a third party to enforce the agreement on behalf of a signatory. See *Cargill*, *Inc. v. Souza*, 201 Cal. App. 4th 962, 966, 134 Cal. Rptr. 3d 39 (2011) (nonsignatory party entitled to attorney fees where it "stands in the shoes of the party to

12

the contract"). Given that the management agreement expressly gave Curo the authority to act on behalf of DPW in terminating the management agreement, we hold that Curo, as DPW's agent, falls within the "either party" limitation in the management agreement's language.

B.      *Did Curo qualify as a prevailing party?*

Because Curo, as DPW's agent, qualifies as a "party" under Section 21, the next step in our analysis is to determine whether Curo was the prevailing party. Dunes claims Curo did not receive any judgment on the merits in its favor so it cannot qualify as a prevailing party.

In the 1980s, our court, and later the Kansas Supreme Court, adopted the definition of "prevailing party" from Black's Law Dictionary 1069 (5th ed. 1979) as:

> "'The party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention. The one in whose favor the decision or verdict is rendered and judgment entered. [Citation omitted.] The party ultimately prevailing when the matter is finally set at rest.'

> "'With respect to the specific question of attorney fees, it has been stated a prevailing party is the person who has an affirmative judgment rendered in his favor at the conclusion of the entire case.'" *Szoboszlay v. Glessner*, 233 Kan. 475, 482, 664 P.2d 1327 (1983) (quoting *Schuh v. Educational Reading Services of Kansas*, 6 Kan. App. 2d 100, 101, 626 P.2d 1219 [1981]).

See also Black's Law Dictionary 1298 (10th ed. 2014) (prevailing party a "party in whose favor a judgment is rendered, regardless of the amount of damages awarded"). Dunes is

13

correct that the district court never rendered judgment in either party's favor, although Dunes' actions resulted in a positive outcome for Curo.

However, Section 21 of the management agreement does not require a judgment in favor of the party seeking attorney fees. The management agreement states the prevailing party is entitled to its attorney fees, "regardless of whether such action proceeds to final judgment." Unfortunately, we have not been presented with, nor has our research discovered, a Kansas case in which the term "prevailing party" from a contractual attorney fee provision has been defined in the context of a settlement. Broadly speaking, we agree with the Utah Court of Appeals that "'when interpreting contractual "prevailing party" language, a court should employ a flexible and reasoned approach' that allows room for common sense to guide a court's decision." *Westmont Mirador LLC v. Shurtliff*, 333 P.3d 369, 373 (Utah App. 2014). This is especially true in the context of a settlement.

The 10th Circuit Court of Appeals has provided guidance in how to determine a prevailing party in the context of a civil rights action when parties reach a settlement. In *Bell v. Board of County Comm'rs of Jefferson County*, 451 F.3d 1097 (10th Cir. 2006), Bell filed suit under 42 U.S.C. § 1983 (2006), challenging his termination of employment by Jefferson County, Kansas. After considerable wrangling, the parties ultimately settled the case, prompting Bell to seek attorney fees, claiming that a settlement between the County and him meant he had been the successful party in the suit. The district court denied Bell's motion, and Bell appealed.

On appeal, the 10th Circuit ruled the district court correctly denied Bell's motion: "[B]ecause there was no judicial involvement in approving the settlement agreement, Bell may not be considered a prevailing party." 451 F.3d at 1101. The *Bell* court cited *Buckhannon Board & Care Home*, *Inc. v. West Virginia Department of Health & Human Services*, 532 U.S. 598, 602-04, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001), which held that "a party is a prevailing party for the purpose of awarding attorneys' fees under § 1988

14

only if he has obtained a judgment on the merits, a consent decree, or some other settlement materially altering the legal relationship of the parties." 451 F.3d at 1102. The *Bell* court found:

> "[I]f a court does not incorporate a private settlement into an order, does not sign or otherwise provide written approval of the settlement's terms, and does not retain jurisdiction to enforce performance of the obligations assumed by the settling parties, the settlement 'does not bear any of the marks of a consent decree' and does not confer prevailing party status on the party whose claims have been compromised. [Citations omitted.] A fee award cannot be based on an order that 'merely recognizes the fact of the parties' agreement and dismisses the case because there is no longer a dispute before it.' [Citation omitted.]
>
> . . . .
>
> "The parties' settlement of the claim raised on Bell's prior appeal was neither approved by this court nor implemented in a consent decree or equivalent order. The parties simply submitted a stipulation of dismissal ultimately prompting the clerk to dismiss the appeal 'without judicial action.' Under *Buckhannon*, such a private settlement is not cognizable in the fee analysis under § 1988 and consequently would not have provided a valid legal ground for altering the initial fee award made by the district court." 451 F.3d at 1103-04.

While *Bell* provides very helpful guidance on this question of determining a prevailing party in the context of a settlement, because we are bound by the terms of the management agreement which allow the award of attorney fees "regardless of whether such action proceeds to final judgment," we must reject the notion that we are foreclosed in this instance from determining a "prevailing party" even where the parties agree to a private settlement. See *Reuille v. E.E. Brandenberger Const., Inc.*, 888 N.E.2d 770, 772 (Ind. 2008) (contracting parties can readily agree to fee-shifting arrangements that are more prescriptive). In fact, common sense dictates that even a cursory review of the "settlement" in this case reveals that Dunes' voluntary and unilateral resignation as the property manager, on the eve of trial, appears to make Curo the prevailing party because

Dunes' action looks more like a capitulation or confession of judgment as it gave Curo virtually everything it was seeking in this litigation with nothing in return. Dunes' action materially altered the legal relationship between the parties.

But setting aside the question of whether a prevailing party can be determined when the parties only enter into a private settlement, even when we utilize the *Bell* factors in determining a prevailing party, we conclude that Curo was the prevailing party principally because we disagree with the district court's characterization of its September 26, 2013, order as a mere private settlement and dismissal. The district court's order was more in the nature of a consent decree.

In this case, after Dunes chose to exercise its right to terminate the management agreement, the district court issued its September 26, 2013, order, finding:

- Dunes terminated the management agreement without admitting liability or making concessions;
- the property's mortgage holder consented to the appointment of a new property manager;
- the parties had asked the court to issue an order to ensure an orderly transition of the property management functions and to address the remaining issues of Curo's claim for attorney fees; and
- the order would be circulated to interested affiliates to afford them the opportunity to intervene in the litigation;

and ordering:

- A new property manager could enter into a management agreement and assume property management functions;
- Dunes would immediately turn over all books, records, files, keys, contracts, agreements, tenant records, financial data, etc, and transition all property management duties to the new property manager by October 7, 2013;

16

- the previously scheduled trial to address Curo's rights to terminate Dunes as property manager was rendered moot by Dunes' termination of the agreement, but Curo and Dunes reserved the right to seek attorney fees and costs if they chose to seek such determination from the court; and
- the order was to be served on various parties within specified timeframes.

The district court's denial of Curo's request for attorney fees followed similar reasoning as set out in *Bell*. In its denial, the court found its September 26, 2013, order outlining the parties' settlement agreement did not represent a judgment or a judicial ruling in Curo's favor. Instead, the order appeared to simply represent a judicial recognition that the matter was resolved between the parties and the upcoming trial setting was no longer needed. Curo argued Dunes chose to terminate the agreement because it knew it would not prevail at trial, but the district court rejected that argument. It found Dunes specifically terminated the agreement without admitting liability or making concessions; therefore, the court could not speculate why Dunes chose to terminate the agreement.

Curo claims it was the prevailing party because it obtained exactly the relief it requested in its petition. Curo's first count asked for a declaratory judgment stating it had the right under the management agreement to terminate the agreement on behalf of DPW. However, the September 26, 2013, order did not give such a declaration. Curo's second count was for specific performance, asking Dunes to resign as property manager and to deliver all books, records, bank accounts, and access to such bank accounts to Curo. The order did order Dunes to turn over all books, records, files, contracts, etc., to the new property manager, but it did not specifically order Dunes to resign or step down as asset manager. However, such an order wasn't necessary since Dunes voluntarily resigned as the property manager and the order's directives were predicated on that fact.

A consent decree usually means the parties' agreement is subject to the court's jurisdiction, continuing supervision, and enforcement. See *Beaver v. Kingman*, 246 Kan. 145, 148, 785 P.2d 998 (1990) ("'A consent decree is essentially a settlement agreement subject to continued judicial policing.' *Williams v. Vukovich*, 720 F.2d 909, 920 [6th Cir. 1983]."). The district court's September 26, 2013, order did specifically order and authorize tasks which required it to maintain supervision of the transition between the property management companies, all of which were predicated on Dunes' voluntary resignation as the property manager, and it provided continuing jurisdiction over the case despite the fact the trial date became moot. The district court's order was more than a mere recognition of the parties' settlement and dismissal of the case. Therefore, in accordance with *Bell*, we find the September 26, 2013, order was a consent decree qualifying Curo as a prevailing party.

Reversed and remanded.

18