**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 5 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TRI-STATE COMMODITIES, INC., a Kansas Corporation,

    Plaintiff-Appellant and Cross-Appellee,

v.

GSO AMERICA, INC.,

    Defendant-Appellee and Cross-Appellant.

No. 99-3117
No. 99-3168
(D.C. No. 96-CV-1100-MLB)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **PORFILIO**, Circuit Judges, and **WEINSHIENK**, District Judge.[**]

INTRODUCTION

    This diversity breach of contract case involves issues concerning the nature of a contract to supply mulch. Appellant Tri-State Commodities, Inc., (Tri-State) believed it had signed a minimum requirements contract with appellee GSO America, Inc., (GSO)

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable Zita L. Weinshienk of the United States District Court for the District of Colorado, sitting by designation.

guaranteeing that GSO would purchase all of its mulch from Tri-State over a five-year period. GSO believed that it merely was a one-year contract, renewable for additional one-year periods, that required GSO to purchase certain minimum amounts if the contract was to renew automatically for another year. GSO also came to believe that Tri-State fraudulently had induced it into signing a contract by misrepresenting Tri-State's relationship with its suppliers.

Tri-State brought suit in the District of Kansas for breach of contract. The district court granted partial summary judgment to GSO, finding that the contract was only for one year, and that GSO was required only to purchase certain limited amounts of mulch from Tri-State. The district court also granted GSO's motion in limine to limit damages to lost profits. Finding for Tri-State on the breach of contract claim, the jury awarded Tri-State damages less than the maximum allowable lost profit figure. GSO then moved for a judgment as a matter of law, which was denied. Tri-State appeals from the district court's partial summary judgment in favor of GSO, and from the ruling granting GSO's motion in limine. GSO cross-appeals from the district court's denial of its motion for judgment. We assert jurisdiction pursuant to 28 U.S.C. § 1291, and, for the reasons stated below, affirm the district court's rulings.


BACKGROUND

Tri-State historically has been in the transportation business. In early 1995, Tri-State

became aware that Munson Trucking (Munson) had mulch for sale at its facilities in Washington State. Tri-State then approached GSO, a manufacturer of mulch and other gardening products, about supplying mulch to GSO. As GSO was concerned about a possible shortage of mulch, it expressed interest. Tri-State then contracted with Munson to purchase mulch, and, after exchanging a variety of oral and written proposals, signed a contract on May 4, 1995, to supply GSO with mulch.

Initially, the contract between Tri-State and GSO functioned well. GSO set up a bagging facility at Tri-States' depot in Nebraska and shipped the bagged mulch to GSO's commercial facilities. However, in July, 1995, after a trip to Washington State where representatives met with Munson, GSO began to suspect that it had been fraudulently induced into signing the contract with Tri-State. Specifically, GSO claims that it had been led to believe that Tri-State had exclusive supply contracts with over forty lumber mills on the west coast.

Relations between Tri-State and GSO went downhill rapidly, and GSO stopped purchasing mulch from Tri-State. On December 20, 1995, GSO removed its bagger from Tri-State's facility, and on February 20, 1996, GSO sent a letter to Tri-State terminating their contract, claiming that Tri-State had misrepresented that it had exclusive supply contracts with over forty mills on the west coast, and characterizing Tri-State's pricing as unreasonable and unconscionable. After the February 20, 1996, letter, GSO began purchasing mulch directly from Munson. Tri-State ceased purchasing mulch from Munson, and was sued for breach of contract by Munson. In turn, Tri-State sued GSO for

breach of contract.

Tri-State's amended complaint against GSO alleged, among other claims, that GSO had agreed to purchase all of its Grade A cedar bark mulch from Tri-State for a period of five years, in the following quantities: 10,000 cubic yards for inventory as well as a minimum of 70,000 cubic yards the first year, 140,000 cubic yards during the second year, and 190,000 cubic yards during the third, fourth and fifth years. GSO denied liability, and claimed the contract was procured by fraud. In GSO's view, the contract required GSO to purchase only 10,000 cubic yards during the first year. After that point, the contract continued only if GSO satisfied a condition precedent, the minimum purchase of at least 70,000 additional cubic yards of mulch within the first year. Another provision of the contract gave either side the right to terminate the contract upon notice at least 90 days in advance of the contract's anniversary.

The district court, in granting GSO's motion for partial summary judgment, found that the contract required GSO to purchase unconditionally 10,000 cubic yards, and required GSO to purchase an additional 70,000 cubic yards only if it wished to renew the contract for another year. However, during the term of the contract, GSO was obligated to purchase all of its mulch requirements from Tri-State. GSO then filed a motion in limine, granted by the district court, which limited the measure of damages to lost profits of $6.20 per cubic yard, not the full contract price of $18.50 per cubic yard as sought by Tri-State.

The jury found that GSO had breached the contract by purchasing mulch during

the first year directly from Munson, rather than through Tri-State, and awarded Tri-State $32,132.60 in damages, based on lost net profits of $4.03 per cubic yard for 7,973.35 cubic yards of mulch purchased by GSO directly from Munson. Following the jury verdict, GSO moved for judgment as a matter of law under Fed. R. Civ. P. 50(b); the motion was denied. Tri-State appeals the district court's partial summary judgment in favor of GSO concerning the interpretation of the contract, and the district court's ruling granting GSO's motion in limine with respect to contract damages. GSO cross-appeals the district court's denial in part of its motion for summary judgment, arguing that Tri-State presented no evidence that GSO processed any mulch in violation of the contract during its term, and also arguing that the district court's instruction to the jury during testimony of a GSO witness in effect granted Tri-State a directed verdict with respect to the volume of mulch at issue.

## DISCUSSION

This Court reviews grants or denials of summary judgment *de novo*. Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999). The methodology of calculating a damage award is a question of law, and thus reviewed *de novo*, while the amount of a damage reward is a question of fact, and thus is reviewed for clear error. Southern Colorado MRI, Ltd. v. Med-Alliance, Inc., 166 F.3d 1094, 1100 (10th Cir. 1999). The standard of review for evidentiary rulings is abuse of discretion. Mitchell v. Gencorp, Inc., 165 F.3d 778, 780 (10th Cir. 1999).

I.  The Contract:

The May 4, 1995, signed contract between Tri-State and GSO contained, in part, the following language (Appendix to Appellant's Brief at 439):

> 2.  Term.  The Term of the contract shall be for a period of five years; provided however, that the term shall automatically be extended for one additional year on each anniversary date so as to create an ongoing five (5) year term, unless either party, at least ninety (90) days prior to the anniversary date, gives written notice to the other party canceling the contract or unless Buyer fails to purchase the minimum quantities of Mulch as described in Section 3 . . . .
>
> 3.  Quantity.  Seller shall sell and Buyer shall buy a minimum of 10,000 cubic yards of the Mulch for Buyer's inventory during the first year of the Term.  As a condition to the annual continuation of this Agreement, Buyer must purchase minimum requirement of Grade "A" Cedar Mulch as follows: 70,000 cubic yards the first year; 140,000 cubic yards the second year; and 190,000 cubic yards for each of the third, fourth, and fifth years and each year thereafter.  If Buyer does not purchase the minimum requirements for each year, Seller may, but is not required, to unilaterally terminate this contract, without penalty or claim to or by either party, and find a new market for the mulch.  These are minimum requirements and the parties may agree to greater amounts for any one year.
>     . . . .
> 6.  Supply.  For each of the first six (6) months of this Agreement, Seller shall supply Buyer with 3,000 cubic yards of Mulch upon Buyer's request.  In the event Seller does not supply the Mulch as requested by Buyer, Seller shall reimburse Buyer the sum of a non-refundable, Five Thousand Dollar ($5,000.00) payment to offset Buyer's lease costs for Buyer's facility at its McCook, Nebraska facility, and the costs incurred by Buyer to disassemble, transport and reassemble its McCook, Nebraska facility's equipment to its Nahunta, Georgia facility.
>     . . . .
> 8.  Buyer's Exclusive Marketing and Distribution

Rights. During the Term of this Agreement, including renewal terms, Seller grants to Buyer the exclusive right to market and distribute its bagged and bulk Mulch products for the United States east of the Rocky mountains . . . .

. . . .

10. Non-Competition. During the Term Buyer agrees not to compete with Seller by purchasing raw, all-bark, Grade "A" cedar mulch and processing it for resale, or selling all-bark, Grade "A" cedar mulch provided by someone other than Seller . . . .

11. Miscellaneous. This Agreement contains the entire understanding of the parties with respect to the subject matter. There are no restrictions, agreements, promises, warranties, covenants of undertaking other than those expressly set forth herein. This Agreement supercedes all other prior agreements and understandings between the parties with respect to the subject matter. This Agreement may only be amended by written instrument executed by all the parties.

. . . .

The district court, relying on the parol evidence rule, found that the contract was unambiguous and contained a complete integration clause, and thus refused to consider extrinsic evidence interpreting the contract. Appellant objects to the district court's interpretation of the contract, arguing: (1) under Kansas law, a contract may be supplemented by certain extrinsic evidence, and (2) that the provisions of the contract need to be harmonized.

First, Tri-State argues that Kansas Statutes Annotated (K.S.A.) § 84-2-202 provides that the terms of a contract may be supplemented by a course of dealings, trade usage, or a course of performance. Tri-State characterizes the contract as a minimum requirements contract. The contract, in Tri-State's view, calls for increasing minimum

purchases, which indicates that the intent of the parties was for GSO to use its best efforts to expand the mulch market. As K.S.A. § 84-2-306, which governs requirements contracts, requires both parties to exercise their best efforts, Tri-State believes the contract best resembles a minimum requirements contract.

Second, Tri-State claims that when the various sections of the contract are harmonized, GSO's only option to terminate the contract is by notifying Tri-State in writing, while Tri-State had the option of terminating if the minimum purchase was not made. To read the contract any other way, according to Tri-State, is to render meaningless the language giving Tri-State the option of terminating the contract.

Tri-State points to prior negotiations to show that the parties contemplated a 70,000 cubic yard minimum purchase for the first year of the contract. To support this argument, Tri-State claims that the contract's provisions for making appellee exclusive distributor east of the Rockies envisioned a strong commercial tie between the parties, consistent with a 70,000 cubic yard minimum purchase instead of a 10,000 cubic yard minimum purchase, and that the requirement that Tri-State supply 3,000 cubic yards a month or pay a penalty also is inconsistent with a 10,000 minimum purchase. Tri-State claims its own subsequent conduct, specifically Tri-State's entering into a minimum requirements contract with Munson to purchase 100,000 cubic yards of mulch per year, is consistent with its interpretation of the contract. (*See* Appendix to Appellant's Brief at 439).

Tri-State points to its dealings with Munson as a "course of performance" intended to support its interpretation of the contract, arguing that it would not enter into a minimum requirements contract with Munson without being confident that it had a similar arrangement with its own customer, GSO. Despite this argument, the Court cannot reform contracts to match one party's intent. It is clear from K.S.A. § 84-2-208 that the course of performance mentioned in K.S.A. § 84-2-202 refers to the course of performance between the parties to the contract, not between one of the parties and a third party, in this case, Munson.

The Kansas Supreme Court has interpreted K.S.A. § 84-2-202 as meaning that parol evidence is to be used only when the agreement is ambiguous, or silent on a matter. Barbara Oil Co. v. Kansas Gas Supply Co., 827 P.2d 24, 34 (Kan. 1992). As a general rule, if the language is clear, there is no room for rules of construction. Marquis v. State Farm Fire and Cas. Co., 961 P.2d 1213, 1219 (Kan. 1998). Analogizing to other states' interpretations of the Uniform Commercial Code, the Tenth Circuit has held that under 2-202 of Oklahoma's Commercial Code, evidence of prior agreements, course of dealing, and course of performance cannot be used where they contradict the terms of the agreement. C.F.Braun & Co. v. Oklahoma Gas & Elec. Co., 603 F.2d 132, 133 (10th Cir. 1979). In the instant case, where the terms of the contract are unambiguous and there is a complete integration clause, the district court was correct to reject intrinsic evidence as to the intent of the parties or the nature of the contract.

Admittedly, this contract is not the finest example of draftsmanship. It appears to

reflect conflicting intentions of the parties. Tri-State claims that the district court's reading of the contract would render its power of termination meaningless. However, the district court's interpretation does not render the language granting Tri-State the right to terminate meaningless, it merely strips the language of the power that Tri-State apparently believes it was to hold: the unilateral right to determine whether the contract continues or terminates. To read the contract in that light, the district court would have to completely ignore the provision making the purchase of a certain quantity of mulch a condition precedent for the continuation of the contract. Under these circumstances, the district court's interpretation of the contract was reasonable. When reading a contract, it is the intent expressed by the parties, not the actual intent of the parties, which controls. General Surgery, P.A. v. Suppes, 953 P.2d 1055, 1057 (Kan. 1998).

II. Damages:

Tri-State appeals the district court's granting of GSO's motion in limine which restricted Tri-State's recovery of damages to net profits lost, rather than a full recovery of the contract price. Tri-State argues that a lack of a market for its mulch dictates that it should recover the entire contract price. Recovery of the contract price is possible under some circumstances under Kansas law; such recovery, however, only applies "[w]hen the buyer fails to pay the price as it becomes due." K.S.A. § 84-2-709. In the instant case, GSO did not refuse to pay for mulch it purchased from Tri-State. After sending Tri-State the February 20, 1996, termination letter, GSO simply refused to purchase its mulch from

-10-

Tri-State as mandated by the non-compete provision of the contract. In essence, GSO either did not accept or repudiated its purchase requirement under the non-compete provision. Damages for repudiation are covered by K.S.A. § 84-2-708, which provides: " . . . the measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages . . . ." K.S.A. § 84-2-708.

It appears that Tri-State actually is seeking to recover the costs incurred by its entry into a true minimum requirements contract with Munson. Tri-State's costs incurred as a result of its misconstruction of the contract are unfortunate, but are not incidental damages recoverable from GSO, and consequential damages are not recoverable under K.S.A. § 84-2-710. Tri-State's losses attributable to GSO's breach of contract consist solely of the lost net profit on the mulch purchased improperly from Munson. The district court found that as a matter of law, the maximum lost net profit was $6.40 per cubic yard. The jury found that the actual lost net profit was $4.03 per cubic yard. Under K.S.A. § 84-2-708, that was the appropriate measure of Tri-State's damages due to GSO's breach.

III. GSO's Cross-Appeal:

Tri-State objects to the cross-appeal, arguing that it is untimely. It argues that the claim properly is made under Fed. R. Civ. P. 50(b), which is timely made only at the close of evidence. Jackson v. City of Cookeville, 31 F.3d 1354, 1358 (6th Cir. 1994). GSO claims that the relief requested is available under Fed. R. Civ. P. 59 and at common law,

-11-

and thus is timely made. Furthermore, GSO points out that Tri-State failed to assert the timeliness defense at the district court level, nor did the trial court rely on such a bar in denying GSO's motion, so such a defense should be considered waived. As a general rule, issues not raised before the lower court are waived on appeal. Yapp v. Excel Corp., 186 F.3d 1222, 1230 (10th Cir. 1999). As Tri-State failed to object to the timeliness of GSO's Fed. R. Civ. P. 50 motion in the lower court, GSO's cross-appeal may be considered.

GSO appeals from the district court's denial of its motion for judgment pursuant to Rule 50(b), arguing that the contract with Tri-State only prohibited it from purchasing AND processing mulch from another supplier. While it may have purchased mulch from Munson, GSO claims that no evidence was introduced that GSO processed the mulch. This argument is baseless. In the Revised Pretrial Order, GSO stipulated to purchasing and processing 3,693.34 cubic yards of mulch from Munson. In addition, there was evidence at trial that GSO moved its bagging equipment from Tri-State's Nebraska facility to Munson's Washington State facility in December, 1995. A representative of Munson testified at trial that he processed and bagged the mulch ordered by GSO using GSO's equipment. The jury was charged with deciding at what point GSO had "purchased and processed" mulch, and decided the point against GSO. There was sufficient evidence introduced at trial to support the jury's finding that GSO purchased and processed mulch in violation of the contract.

GSO also appeals on the basis that the district court confused the jury by

-12-

instructing it to ignore certain evidence. During the testimony of Craig Lehmkuhl, GSO's chief financial officer, evidence was presented to the jury demonstrating that GSO had purchased only 3,693.34 cubic yards of mulch from Munson. GSO claimed that credits received from Munson showed that several sales occurred after the term of the Tri-State contract ended. GSO also attempted to introduce additional documents showing that other mulch GSO allegedly purchased was not actually purchased or received until after the term of the contract had expired. Tri-State objected to the introduction of the latter documents, and the district court instructed the jury to disregard the testimony concerning "credits". Although Jury Instruction 12 stated that GSO claimed to have purchased only 3,693.34 cubic yards of mulch in violation of the contract, GSO believes that the jury may have been misled into believing that they were to ignore all evidence of credits. This confusion would have extended to the jury instructions, in GSO's view, and thus the instructions were prejudicial and should be corrected. Royal College Shop v. Northern Ins. Co. of N.Y., 895 F.2d 670, 681 (10th Cir. 1984).

The jury instructions themselves are clear and unambiguous. The only possibility of confusion arises from the admonishment to the jury to ignore the evidence concerning credits during Lehmkuhl's testimony. GSO could have requested clarification from the trial judge, but chose not to do so. The jury was presented evidence supporting GSO's claim and Tri-State's claim concerning the amount of mulch purchased in violation of the contract. The jury apparently found Tri-State's evidence more persuasive. The Court

finds no evidence of error or prejudice.

AFFIRMED.

ENTERED FOR THE COURT


Zita L. Weinshienk
Senior District Judge